1524

Terry G. KETTERMAN and Myra L. Ketterman, Respondents v. SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

(395 S.E. (2d) 187)

Court of Appeals

*W.H. Arnold* and *David L. Moore, Jr.*, of *Love, Thornton, Arnold & Thomason*, Greenville, *for appellant.*

*Steven M. Krause*, of *Epps, Krause & Nicholson*, Anderson, *for respondents.*

Heard June 6, 1990.

Decided July 23, 1990.

SANDERS, Chief Judge:

Respondents Terry G. Ketterman and Myra L. Ketterman sued appellant South Carolina Farm Bureau Mutual Insurance Company for breach of an insurance contract and bad faith refusal to pay first party benefits under an insurance contract. The jury returned a verdict in favor of Mr. and Mrs. Ketterman for actual and punitive damages. The Farm Bureau appeals. We affirm.

The Farm Bureau insured a chicken house. Its roof collapsed after a snow storm. Mr. and Mrs. Ketterman gave notice of the loss and filed a proof of loss. The Farm Bureau adjuster tendered a draft to Mr. Ketterman. The draft contained a release on its reverse side. Mr. Ketterman signed a loan receipt for the draft, but he did not sign the release or negotiate the draft. (Mrs. Ketterman did not sign either the loan receipt or the release.) Thereafter, the parties failed to agree on an evaluation of the damages to the chicken house, and Mr. and Mrs. Ketterman brought suit. The Farm Bureau pleaded the loan receipt as "a bar to any recovery." On motion of Mr. and Mrs. Ketterman, the trial judge struck that defense, ruling that the loan receipt was used for the purpose of giving the Farm Bureau "control of the subrogation claim and not for the purposes of [an] accord and satisfaction or [a] release or payment."

The Farm Bureau argues that the trial judge erred in striking the defense based on the loan receipt. We reject this argument for essentially the same reason as that given by the trial judge.

A loan receipt is a device by which an insurance company can have its cake and eat it too.[1] The company, instead of paying a loss, advances to its insured the amount of the loss as a "loan." The loan is, however, repayable only to the extent of any recovery by the insured from a third person responsible for the loss. The insured either agrees he will prosecute an action against the third person, or he agrees the company may prosecute or compromise the action in his name. In either event, the action is under the control of the company and at its expense. By making a loan, rather than a payment, a company can promptly pay a claim and, at the same time, avoid becoming a formal party against the person responsible for the loss. (There can be other advantages as well.)[2]

The loan receipt signed by Mr. Ketterman contains the standard language necessary to effectuate its purpose. According to its terms, he acknowledges receipt of the amount of the draft as a loan, repayable to the extent of any recovery he may make against a third person. He pledges, in great detail, his full cooperation, and he agrees, in effect, that the Farm Bureau will have control of any claim he may have against a third person. But, the loan receipt does not contain any language preventing him from pursuing a claim against the Farm Bureau. Nor does the loan receipt contain any language releasing any claim he may have against the Farm Bureau. Consistent with this construction, the Farm Bureau

[1] See The Concise Oxford Dictionary of Proverbs 109 (J.A. Sampson ed. 1982) (defining the phrase "You cannot have your cake and eat it") ("You cannot 'have it both ways': once the cake is eaten, it can no longer be 'had' or retained in one's possession. The positions of have and eat are often reversed.

1546 J. Heywood Dialogue of Proverbs II. ix. L2 I trowe ye raue, Wolde ye bothe eate your cake, and haue your cake? . . .").

[2] See 16 G. Couch, Couch on Insurance 2d § 61:75 (M. Rhodes rev. ed. 1983); 44 Am. Jur. (2d) Insurance §§ 1798 and 1819 (1982) (discussing the function and purpose of a loan receipt). See also Martin v. McLeod, 241 S.C. 71, 127 S.E. (2d) 129 (1962) (upholding the validity of a loan receipt); Luckenbach v. W.J. McCahan Sugar Refining Co., 248 U.S. 139, 149, 39 S.Ct. 53, 55, 63 L.Ed. 170 (1918) (in which Justice Brandeis, discussing loan receipts, says: "It is creditable to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice.").

adjuster testified that he did not consider the loan receipt a release. If, indeed, the loan receipt amounted to a release, there would have been no need to include the release on the back of the draft.

The Farm Bureau argues further that the trial judge "erred in permitting [Mr. Ketterman's] counsel to argue upon a new issue in his final summation in contravention of the applicable Circuit Court rule."

Rule 43(j), SCRCP, provides: "The party having the right to open shall be required to open in full, and in reply may respond in full but may not introduce any new matter." In his reply argument, counsel for Mr. Ketterman suggested for the first time a formula for determining punitive damages. He had previously argued that the alleged misconduct of the Farm Bureau was intentional, and he had specifically mentioned punitive damages, but he had not suggested any formula for their determination. Counsel for the Farm Bureau objected. The trial judge responded to the objection by stating: "I'm going to allow you to go into it briefly. You have three seconds." Counsel for Mr. Ketterman concluded his argument immediately. His entire argument regarding the formula consists of less than a page in the transcript of record—two lines before the objection and fifteen lines after he was given three seconds to conclude.

Quite obviously, counsel for Mr. Ketterman violated the Rule by introducing new matter in his reply argument. Nevertheless, reversal is not required. "To warrant reversal, an appellant must show not only error, but also prejudice." *Dibble v. Thomas*, 391 S.E. (2d) 729, 730 (S.C. Ct. App. 1990). We are not convinced that the Farm Bureau was prejudiced by the argument. In the first place, the objectionable part of the argument lasted only a few seconds. "Litigants, whether plaintiffs or defendants, are entitled to fair trials but not perfect trials." *Aakjer v. Spagnoli*, 291 S.C. 165, 177, 352 S.E. (2d) 503, 511 (Ct. App. 1987). Moreover, it is apparent from the verdict that the jury did not, in fact, apply the suggested formula.

For these reasons, the judgment of the Circuit Court is

Affirmed.

GARDNER and CURETONS, JJ., concur.