479 S.E.2d 67

Janet M. McKISSICK, Respondent,

v.

J.F. CLECKLEY & COMPANY, Appellant.

No. 2599.

Court of Appeals of South Carolina.

Heard June 6, 1996.

Decided Nov. 25, 1996.

328

332

Charles E. Carpenter, Jr., and Deborah Harrison Sheffield, Richardson, Plowden, Grier & Howser; James W. Alford and Richard C. Thomas, Barnes, Alford Stork & Johnson, Columbia, for appellant.

David A. Fedor and J. Marcus Whitlark, Fedor, Massey, Whitlark & Ballou; James C. Anders, Columbia, for respondent.

CONNOR, Judge.

Dr. Janet M. McKissick sued J.F. Cleckley & Company, an asphalt and paving contractor, for damages she sustained in a vehicular accident. An Allendale County jury awarded her ten million dollars. We affirm.

In March 1992, McKissick was accompanying a pregnant patient in an ambulance. The patient, who was in labor, was being transported from Allendale to a hospital in Beaufort for a possible caesarean section. While en route, the ambulance driver, Barbara Smith, drove off the right side of the road to avoid a deer.

The edge of the road had a significant drop off. When Smith attempted to get back onto the highway, she lost

control of the ambulance, causing it to flip over and skid into a tree. McKissick sustained severe personal injuries.

Cleckley appeals numerous trial issues.

## I. VENUE

Cleckley first contends the court erred in changing venue from Orangeburg County, where Cleckley resided, to Allendale County, McKissick's residence.

McKissick originally filed her complaint in Allendale County. Cleckley moved to change venue to Orangeburg County under S.C.Code Ann. § 15-7-30 (1976), arguing it did not maintain offices, conduct business, or own property, in Allendale County. The circuit court denied the motion. Cleckley appealed to the South Carolina Supreme Court. While the appeal was pending, McKissick consented to change venue to Orangeburg County.

Thereafter, McKissick moved to change venue to Allendale County under S.C.Code Ann. § 15-7-100 (1976), alleging the convenience of witnesses and the ends of justice would be promoted by the change. The circuit court granted the motion.

▇▇▇▇ Corporations have a statutory right to venue in any county in which they own property and transact business. *Thomas & Howard Co. v. Wetterau Inc.*, 291 S.C. 237, 353 S.E.2d 141 (1987). Where the facts concerning a defendant's residence are uncontradicted, the trial court must, as a matter of law under § 15-7-30, change venue to the county where the defendant resides. *Ellis v. Oliver*, 307 S.C. 365, 415 S.E.2d 400 (1992); *Chestnut v. Reid*, 299 S.C. 305, 384 S.E.2d 713 (1989). Either party may then make a motion to change venue under § 15-7-100 based on convenience of the witnesses and the promotion of justice. *Id.* Section 15-7-100, like other change of venue statutes, is in derogation of, rather than in conflict with, the statutory right of a defendant to the trial of a case in the county in which the defendant resides at the time of the commencement of the action. *Johnston v. Belk-McKnight Co. of Newberry, S.C., Inc.*, 194 S.C. 490, 10 S.E.2d 1 (1940) (construing statutes then in effect as being in derogation of the common law).

■ Even though the right of a defendant in a civil action to trial in the county of its residence is substantial, the trial judge retains the sound discretion to change the place of trial if both the convenience of witnesses and the ends of justice would be served. *Arledge v. Colonial Oil Indus., Inc.*, 272 S.C. 88, 249 S.E.2d 740 (1978); *Skinner v. Santoro*, 245 S.C. 35, 138 S.E.2d 645 (1964).

■ We will not disturb the trial judge's decision on appeal unless we find a manifest abuse of discretion resulting in an error of law. *Graham v. Beverly*, 235 S.C. 222, 110 S.E.2d 923 (1959). Moreover, the error of law must be so opposed to the trial judge's sound discretion as to amount to a deprivation of the legal rights of the party. *O'Shields v. Caldwell*, 208 S.C. 245, 37 S.E.2d 665 (1946).

■ Where a motion for change of venue is predicated on the grounds of convenience of the witnesses and the ends of justice, the trial judge must resolve questions of fact. *Shelton v. Southern Kraft Corp.*, 195 S.C. 81, 10 S.E.2d 341 (1940). Because the facts often vary, no fixed rules can be laid down to cover each case. *O'Shields v. Caldwell.* A great deal must, therefore, be left to the trial judge's discretion. *Id.* The question is whether the convenience of the witnesses would be promoted, rather than the degree to which it would be promoted. *Reynolds v. Atlantic Coast Line R. Co.*, 217 S.C. 16, 59 S.E.2d 344 (1950).

■ The movant has the burden of making a prima facie showing that both the convenience of the witnesses and the ends of justice would be promoted by the change. *Brice v. State Co.*, 193 S.C. 137, 7 S.E.2d 850 (1940). Although both requirements must be met, a showing of the convenience of the witnesses can, depending on the facts of the case, bear on the issue of promotion of justice. *Varnadoe v. Hicks*, 264 S.C. 216, 213 S.E.2d 736 (1975); *Beard v. Billups Petroleum Co.*, 228 S.C. 481, 90 S.E.2d 685 (1956) (showing of convenience of witnesses constitutes a prima facie showing that ends of justice would be promoted by change of venue).

■ A precise definition of the ends of justice is somewhat elusive. However, the ends of justice are promoted by having the credibility of witnesses judged by jurors of the vicinage,

the county in which the witnesses reside. *Holden v. Beach,* 228 S.C. 234, 89 S.E.2d 433 (1955).

Once the moving party makes a prima facie showing a venue change will serve both the convenience of the witnesses and the ends of justice, the burden shifts to the party resisting the motion to overcome at least one of these requirements. *Mixson v. Agricultural Helicopters, Inc.,* 260 S.C. 532, 197 S.E.2d 663 (1973).

In attempting to meet her burden, McKissick introduced the affidavits of eight witnesses. In addition, she submitted her own affidavit, and that of her attorneys.

McKissick's affidavit described her severe medical problems and the resulting need for constant attention. The extensive medical equipment necessary for her daily needs was located at her home, two blocks from the Allendale County Courthouse. Moreover, she alleged staying at a motel in Orangeburg rather than at home would cause her extreme medical hardship.

In his affidavit, Dr. William Wessinger, the orthopaedic surgeon who operated on McKissick for her spinal injury, corroborated McKissick's specific allegation her medical problems would make it difficult for her to travel out of town. He also asserted it would be more convenient for him to travel to Allendale, rather than Orangeburg, because his medical practice required his constant availability.

McKissick's lawyers, James C. Anders and David A. Fedor, submitted an affidavit dated May 5, 1994.[1] They alleged Dr. Wessinger's testimony at trial would encompass all of McKissick's pertinent medical issues, including the extent of her injuries. Additionally, Anders and Fedor summarized the proposed testimony of Philip Dallas, Thomas Smith, Levon Smith, and Lindi Templeton, and stated the materiality of those witnesses' testimony.

Debbie Beuhner lived and worked in Barnwell, twenty minutes from Allendale. She claimed a trial in Orangeburg

---

1. Anders alone had submitted an earlier affidavit dated March 22, 1994, in which he listed twenty witnesses for whom it would be more convenient if the trial were held in Allendale County.

would be inconvenient because travelling farther would cause her to miss additional work.

Geneva Smith, who lived in Allendale County and worked in Jasper County, referred to the financial strain of being absent from work, as well as her hesitancy to travel out of town alone after dark.

Philip Dallas alleged extreme difficulty in attending a trial farther away than Allendale because of his duties as a Marine at Parris Island and also his part-time work as a volunteer firefighter. Dallas lived in Beaufort County. The Anders and Fedor affidavit stated Dallas would testify concerning the speed of the ambulance just prior to the accident.

Thomas W. Smith, who lived and worked in Beaufort County, said it would be a hardship for him to be away from work any longer than necessary to attend the trial in Allendale. He also advised he worked shifts, and if the trial were moved, he might have to travel after working a late night shift. Anders and Fedor explained Smith would also testify concerning the speed of the ambulance just prior to the accident.

Levon Smith cited transportation problems and the financial hardship of being away from work an additional amount of time. Smith lived in Estill in Hampton County, which is approximately thirty miles south of Allendale. The Anders and Fedor affidavit said Smith was an eyewitness to McKissick's physical and mental condition before and after she was injured.

Lindi Templeton, who lived in Allendale and worked at the Allendale Family Practice Clinic, maintained attending a trial out of town would cause her to miss additional work. This would create a hardship on her both at work and at home. She also claimed she would have to travel alone. Anders and Fedor maintained Templeton was an eyewitness to McKissick's physical and mental condition before and after the accident.

Barbara Smith, the ambulance driver, maintained she was an eyewitness to the accident. She described her poor physical condition, specifically alleging travel to Orangeburg would be difficult because she remains in a wheelchair. All of her equipment and medical necessities were located at her home,

which was two blocks from the Allendale County Courthouse. Her treating physician submitted an affidavit which corroborated her medical condition, as well as the location of her medical equipment and necessities. Moreover, the joint affidavit of McKissick's lawyers pointed out Smith was the only eyewitness to all of the events surrounding the accident.

Cleckley filed thirteen affidavits in response to McKissick's. Three were from witnesses who worked for the South Carolina Department of Highways and Public Transportation in Columbia. These witnesses stated attending a trial in Orangeburg, rather than in Allendale, would be closer to their workplaces and therefore more convenient. These witnesses planned to testify concerning the quality of Cleckley's work and the duty Cleckley owed to the general public.

Cleckley also presented the affidavits of six employees. They planned to address Cleckley's responsibilities under the contract with the Department, the quality of the asphalt mix used, Cleckley's duties to the general public, safety precautions taken by Cleckley, and Cleckley's responsibility to perform shoulder work. These witnesses all worked in Orangeburg and alleged having the trial remain in Orangeburg would be much more convenient.

Cleckley had an expert witness from Atlanta who was to testify that Cleckley's actions or inactions in no way contributed to the accident. He stated Orangeburg would be more convenient for him because of its accessibility to the interstate.

The remaining affidavits were from Cleckley's attorney and from the Orangeburg and Allendale County Clerks of Court, elaborating on the handicap accessibility of their respective courthouses.

As noted earlier, by making the motion to change venue, McKissick assumed the burden of proof. That burden included making a prima facie showing both the convenience of witnesses and the ends of justice would be served by a change. *Durant v. Black River Elec. Coop., Inc.*, 271 S.C. 466, 248 S.E.2d 264 (1978) (holding even if movant showed transfer of venue would be more convenient for his witnesses, failure to prove ends of justice would be served defeats motion).

■ To satisfy her burden, first McKissick had to demonstrate the witnesses who would be inconvenienced would testify about relevant and material facts in issue. *Arledge v. Colonial Oil Indus., Inc.*, 272 S.C. 88, 249 S.E.2d 740 (1978). In fact, neither the trial court nor this court can consider the convenience of any witness when the materiality of his or her testimony has not been shown.

McKissick sufficiently addressed the materiality of witnesses Philip M. Dallas, Thomas W. Smith, Levon Smith, Lindi Templeton, and Barbara Smith. Additionally, it is obvious McKissick's testimony, as well as that of her doctor, Dr. William Wessinger, would be necessary and material. As our Supreme Court noted in *Arledge:*

It is difficult to conceive of a more material witness to an automobile accident than one who saw it happen; nor a more material witness to the extent of the injuries sustained than the doctor who treated respondent for such injuries.

*Id.* at 91–92, 249 S.E.2d at 742.

On the other hand, McKissick failed to explain the materiality of witnesses Debbie Beuhner and Geneva Smith. Accordingly, we cannot consider these two affidavits.[2] *Guardian Fidelity Corp. v. United States Fidelity & Guaranty Co.*, 266 S.C. 595, 225 S.E.2d 655 (1976) (affirming denial of transfer of venue when affidavits submitted by moving party did not state what the particular witnesses named would testify to or that the testimony was material to the moving party's case).

■ In attempting to demonstrate their convenience would be served by a change of venue, a number of McKissick's witnesses stated the travel distances involved would justify a change. Although distance alone is not determinative, there is a presumption it is more convenient to travel a lesser rather than a greater distance. *Arledge v. Colonial Oil Indus., Inc.*, 272 S.C. 88, 249 S.E.2d 740 (1978) (ordinarily, the necessity to travel a greater distance will sustain an inference of inconvenience).

---

2. Similarly, we do not consider the witnesses who were listed on Anders's March affidavit with no explanation of their proposed testimony.

For McKissick and Smith, distance was a matter of travelling two blocks versus forty-five miles. Lindi Templeton, also from Allendale, would have had to travel this same distance. Philip Dallas and Thomas Smith resided sixty miles southeast of Allendale. Driving to Orangeburg would be farther for them. Levon Smith lived in Hampton County, which adjoins Allendale County to the south. Therefore, her travelling time would also have been increased by having to drive to Orangeburg.

Our Supreme Court has held, when changing venue would be more convenient to the witnesses, "[i]t is not a question of how much their convenience would be promoted thereby, but *whether* it would be so promoted." *Reynolds v. Atlantic Coast Line R. Co.*, 217 S.C. at 21, 59 S.E.2d at 346 (emphasis ours).

We affirm the trial judge's discretionary finding McKissick proved the convenience of the witnesses would be served by changing the location of the trial.

We must next determine whether McKissick also proved the ends of justice would be advanced. As stated earlier, a showing concerning the convenience of the witnesses can, depending on the facts of the case, bear on the issue of promotion of justice. *Varnadoe v. Hicks*, 264 S.C. 216, 213 S.E.2d 736 (1975). Here, the difficult medical challenges facing McKissick and Barbara Smith are a prime example of a convenience issue bearing on the ends of justice.

Furthermore, a number of witnesses resided closer to Allendale than to Orangeburg. This is significant because having jurors from the same area as the witnesses is important in determining whether the ends of justice have been promoted by changing venue. We also note the scene of the accident was closer to Allendale.

The trial judge did not abuse his discretion in deciding the ends of justice would be served by changing venue.

The judge further determined Cleckley did not overcome the prima facie showing by McKissick. Although Cleckley had a number of witnesses who resided in Orangeburg, determining whether a change of venue is appropriate involves more than a simple head count. *McCauley v. McLeod*, 230 S.C. 380, 95 S.E.2d 611 (1956) (trial judge in the exercise of his

discretion is not confined to the consideration of mere numbers of witnesses).

Given our scope of review, we do not believe the judge abused his discretion on this issue.

Cleckley argues. McKissick's hardship claim is diluted because she was able to travel to Allendale from Baltimore, Maryland the day before the trial. *See Holden v. Beach*, 228 S.C. 234, 89 S.E.2d 433 (1955) (contention of paraplegic party that travel to resident county of defendant would pose great inconvenience severely lessened when party voluntarily travelled 125 miles for vacation before trial). However, McKissick had returned from Baltimore where she had undergone surgery. This is hardly a corresponding situation to that in *Holden*, where the plaintiff had taken a vacation just prior to trial.

Additionally, Cleckley maintains the alleged hardship on the plaintiff should not be considered at all. This argument misapprehends the holding of *Reynolds v. Atlantic Coast Line R. Co.*, 217 S.C. 16, 59 S.E.2d 344 (1950), where the Court reversed the trial judge's denial of defendant's motion to change venue from Darlington County to Florence County. Although Justice Oxner, in his dissent, stated the inconvenience of the parties should not be considered in motions for change of venue, the majority disagreed, and, in fact, considered affidavits on behalf of the corporate defendants.

The trial judge did not abuse his discretion in finding venue should be changed from Orangeburg County to Allendale County.

## II. CONTINUANCE

Cleckley contends the trial judge erred in failing to grant a third continuance because McKissick notified Cleckley of a significant change in her medical condition shortly before trial.

The accident occurred on March 14, 1992. McKissick filed her complaint on April 12, 1993. The case was called for trial in November 1993, and, on Cleckley's motion, was continued until July 18, 1994. Cleckley's counsel requested a second continuance by letter to Judge Smoak, and was granted an

additional sixty days without a formal order. The request for a third continuance was made by motion dated July 1, 1994.

██ A motion for continuance lies within the trial judge's sound discretion, and his or her ruling will not be reversed without a clear showing of abuse. *First Savings Bank v. McLean, et al.*, 314 S.C. 361, 444 S.E.2d 513 (1994). While we acknowledge this was a complex case requiring tremendous amounts of preparation, we do not believe the trial judge abused his discretion in denying Cleckley's motion three weeks before trial.

## III.  EVIDENTIARY RULINGS

### A.  The Red Book

Cleckley argues the trial judge erred in admitting the contract between Cleckley and the Department into evidence.

The contract, admitted without objection, incorporates the South Carolina State Highway Department Standard Specifications for Highway Construction, referred to as the "Red Book." Cleckley contends the trial judge erroneously allowed McKissick to use the contract and the Red Book to establish Cleckley's standard of care to McKissick. Cleckley alleges common law negligence should have controlled because the Red Book expressly disclaims third party rights. Moreover, Cleckley asserts the trial judge compounded this error by refusing to allow Cleckley to offer evidence to rebut McKissick's expert's erroneous conclusions concerning Cleckley's duty to McKissick.

McKissick submitted three theories of liability to the jury. She alleged Cleckley was liable for her injuries because (1) Cleckley failed to warn motorists that the low shoulders on the sides of the highway were a dangerous condition; (2) Cleckley failed to correct the admittedly dangerous condition of the drop off between the pavement and the shoulder; and (3) Cleckley used substandard asphalt which contributed to the accident.

To establish Cleckley's negligence on the first two theories, McKissick, through her expert witnesses, relied on the following provisions of the contract found in the Red Book.

**104.06.** **Maintenance and Maintaining Traffic.** The Contractor will be required, without direct compensation, to maintain in good condition and satisfactory to the Engineer, the entire section or sections of highway, within the limits of the contract from the time he first begins work until all work has been completed and accepted.

. . . .

**107.09.** **Public Convenience and Safety.** The Contractor shall at all times conduct the work in such a manner as to provide for and insure the safety and convenience of the traveling public.

. . . .

**107.11.** **Barricades, Warning Signs, Detour Signs and Traffic Control Devices.** The Contractor, without extra compensation (unless bid items are set up in the contract), shall provide, erect and maintain in good condition all necessary barricades, suitable and sufficient lights, danger signals, signs and other traffic control devices; shall provide qualified flagmen where necessary to direct the traffic; and shall take all necessary precautions for the protection of the work, the warning that the road is under construction, and the safety of the public.

The Red Book also contained the following provision:

**107.17.** **Third Party Liability.** It is not intended by any of the requirements of any part of these specifications to make the public or any member thereof a third party beneficiary hereunder, or to authorize anyone who is not a party to a contract entered into pursuant to these specifications to maintain a suit for personal injury or property damage otherwise than as authorized and provided by law.

McKissick's experts concluded Cleckley owed McKissick, as a member of the general public, a duty to insure her safety. Furthermore, Cleckley's breach of that duty was a proximate cause of the accident. Cleckley admitted it knew the low shoulders along the highway it was resurfacing were dangerous. However, Cleckley contended it did not have an affirmative duty to warn motorists of that condition.

As a general rule, an issue may not be raised for the first time on appeal. *Smith v. Phillips,* 318 S.C. 453, 458 S.E.2d 427 (1995); *Hendrix v. Eastern Distrib., Inc.,* 320 S.C. 218,

464 S.E.2d 112 (1995) (vacating Court of Appeals opinion to the extent it addressed issue that was not preserved). To preserve an issue regarding the admissibility of evidence, a contemporaneous objection must be made. *Geddings v. Geddings*, 319 S.C. 213, 460 S.E.2d 376 (1995). Failure to object when the evidence is offered constitutes a waiver of the right to have the issue considered on appeal. *Id.*

Moreover, a specific objection to the admission of evidence must be made to preserve the issue for appeal. *Honea v. Prior*, 295 S.C. 526, 369 S.E.2d 846 (Ct.App.1988). The objection should be sufficiently specific to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the trial judge. *Broom v. Southeastern Highway Contracting Co.*, 291 S.C. 93, 352 S.E.2d 302 (Ct.App.1986). The same ground argued on appeal must have been argued to the trial judge. *Gurganious v. City of Beaufort*, 317 S.C. 481, 454 S.E.2d 912 (Ct.App.1995) (a party may not argue one ground at trial and a different theory on appeal).

Here, Cleckley did not object to the qualification of McKissick's witness, Dr. Peter Parsonson, a professor of civil and environmental engineering at Georgia Tech, as an expert in the areas of highway design, construction, maintenance, and various other areas of his specialties.

Nor did Cleckley object to the admission of the Red Book at the time it was offered. As a matter of fact, when McKissick's attorney asked his expert to read part of the contract between Cleckley and the Department into the record, Cleckley's attorney replied, "No objection at this time. We agree that part and parcels of the Red Book is [sic] part of the contract."

Additionally, when McKissick actually moved to introduce the Red Book into evidence, the court inquired whether Cleckley's attorney had any objection. He responded, "Not at this time." Therefore, Cleckley cannot now complain about the admission of the Red Book into evidence.

Cleckley now also alleges the trial judge erroneously allowed McKissick to use the Red Book, rather than common law negligence, to establish the standard of care it owed McKissick. However, nowhere does Cleckley point to specific

objections and rulings as required under Rule 207(b)(4) of the South Carolina Appellate Court Rules.[3] We are left to "grope in the dark" concerning the specific allegations of error. *See Connolly v. People's Life Ins. Co. of S.C.*, 299 S.C. 348, 384 S.E.2d 738 (1989) (holding Court of Appeals should not have addressed "somewhat general" exceptions which required the court to grope in the dark searching the record for the issue being raised).

Cleckley made several objections during witness testimony concerning the contract, but only one of these objections approaches the argument Cleckley makes on appeal. During the testimony of one of McKissick's expert witnesses, after the contract had been admitted into evidence, McKissick offered into evidence an exhibit showing excerpts from the contract. Cleckley objected, stating: "The redbook cannot be used to support civil litigation between...." Before Cleckley's attorney finished stating the grounds for the objection, the trial judge interrupted the attorney stating he understood the objection, but noting the entire contract had already been admitted into evidence. Cleckley's attorney replied: "But your Honor, every provision in the redbook does not apply and that's why...." The trial judge again interrupted Cleckley's attorney, remarking: "Well, I understand sir. Are you saying that this does not apply?" Cleckley's attorney replied: "We are saying the witness is not qualified to say whether it applies or not." The trial judge then admitted the exhibit over Cleckley's objection. Although it appears the trial judge interrupted Cleckley's attorney before he fully stated the grounds for his objection, the objection as it appears in the record on appeal is not sufficient to raise the issue of McKissick using the contract to establish Cleckley's duty and standard of care.

Moreover, the judge did not use the contract rather than common law negligence to establish the standard of care. He correctly charged the jury the elements of common law negligence. He did not instruct them to use the provisions contained in the contract to determine whether Cleckley was negligent in performing the work required by the contract.

---

3. Rule 207(b)(4), SCACR, requires a brief to contain references "to where relevant objections and rulings occurred in the transcript."

Furthermore, Cleckley did not ask the judge to give limiting instructions regarding the use of the contract in establishing negligence.

▆ Cleckley next argues the trial judge erred by allowing McKissick to use the Red Book to make Cleckley an insurer of the public's safety, giving five specific citations to the record. However, in each of these instances, Cleckley either made no objection, stated a general objection with no grounds, or gave a basis at trial which is different from that now argued on appeal.

Cleckely further contends the trial judge compounded the above errors by refusing to allow it to rebut the tainted evidence. Cleckley first complains the judge disallowed Harry Mims's testimony by ruling he could be cross-examined concerning his prior convictions under the Sherman Antitrust Act if Cleckley called him as a witness. This ruling is addressed in a separate section of this opinion.

▆ Additionally, Cleckley complains the Department's engineering director was not allowed to offer his opinion interpreting the contract between Cleckley and the Department. The judge disallowed this testimony under the parol evidence rule. The judge also refused to allow the Department's maintenance construction engineer to give his opinion concerning who was responsible for putting up signs warning of the low shoulders because the contract itself specifically provided for that requirement.

Cleckley is once again attempting to argue a basis for reversal on appeal that was not argued to the trial judge.

## B. Substandard Asphalt

Cleckley alleges the trial judge erred in allowing McKissick to introduce evidence Cleckley breached its contract with the Department by using asphalt which deviated from the contract specifications. McKissick's expert testified the asphalt Cleckley used was substandard because the ratio of dust to asphalt was too low. He also said it did not conform with the contract. The expert's analysis was based on testing methods different from those used by the Department and was based on tests performed at a lab, rather than the job site. Cleckley, on the other hand, presented expert testimony the as-

phalt, tested by the Department at the job site, met or exceeded all Department standards.

■ Evidence is relevant and admissible if it tends to establish or make more or less probable some matter in issue. *Hoeffner v. Citadel*, 311 S.C. 361, 429 S.E.2d 190 (1993). Here, the matter in issue was whether Cleckley complied with the asphalt quality specifications set forth in the contract. The contract calls for a dust to asphalt ratio of 0.6 to 1.2. McKissick's expert testified that according to tests performed in accordance with the American Standard of Testing Materials, the ratio of dust to asphalt Cleckley used was below 0.6. Cleckley's expert, on the other hand, testified that the dust to asphalt ratio complied with the contract specifications when samples of the asphalt were tested in accordance with the Department's testing methodology. Cleckley's expert also testified concerning the differences between the two testing methods and gave his opinion the method used by McKissick's expert was unreliable.

The contract called for a minimum 0.6 dust to asphalt ratio. No one disputed this, nor made the subject one for expert interpretation. In other words, McKissick's expert did not testify asphalt with a dust to asphalt ratio of 0.6 would be substandard regardless of the contract specifications. Rather, the expert opined Cleckley's asphalt did not meet the contract's specifications. Furthermore, any differences between the testing methods employed by McKissick's expert and those used by the Department, as well as the effect of the differences on the reliability of the test results, went to the weight to be accorded the evidence, not its admissibility. *See Corley v. Rowe*, 280 S.C. 338, 312 S.E.2d 720 (Ct.App.1984) (the weight to be given evidence lies within the province of the factfinder).

The trial judge has discretion concerning the admission of evidence and his or her ruling will not be disturbed on appeal absent an abuse of that discretion. *Hofer v. St. Clair*, 298 S.C. 503, 381 S.E.2d 736 (1989). Here, the evidence on whether the asphalt was substandard, and hence caused or contributed to the pavement crumbling, was relevant and properly submitted to the jury as a fact question.

## C. Plaintiff's Precautionary Measures

Cleckley argues the trial judge erred by refusing to allow Cleckley to question another of McKissick's experts about whether or not he set out warning signs while he conducted tests at the accident site.

In preparation for trial, the expert, assisted by two members of the Highway Patrol, obtained core samples from the highway to conduct various tests.

This expert's failure to set out warning devices was irrelevant to the issue of Cleckley's negligence.[4] *See* Rule 401, SCRE (evidence is relevant when it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence).

## D. Cleckley's Profit

Cleckley contends the trial judge also erred by preventing Cleckley from refuting McKissick's allegations Cleckley's financial motivations contributed to its negligence.

The contract price for the paving job was admitted into evidence without objection. Counsel for McKissick argued during the trial that Cleckley was more interested in money than safety. In response, Cleckley attempted to offer evidence of its net profit on the job. The trial judge refused to allow Cleckley's employees to testify about the actual costs involved in the job. Cleckley argues evidence of its net profit was relevant in light of McKissick's efforts to show the company had financial motives for failing to take proper precautionary measures.

Because the contract was admitted without objection, we cannot now consider alleged errors or any issue concerning its admissibility. *Geddings v. Geddings*, 319 S.C. 213, 460 S.E.2d 376 (1995) (failure to object when evidence is offered precludes appellate review). Cleckley did present evidence the contract required the company to perform work on more than fourteen miles of road and that the work took longer than seven days. From this evidence, the jury could have inferred the entire

---

4. The highway patrol officer testified he alerted oncoming traffic with his flashing blue lights.

$475,000 contract price covered more than only seven miles of resurfacing.

Cleckley further argues the trial judge erred in refusing to allow testimony regarding costs involved in completing the work required by the contract. Cleckley's counsel posed the following question to one of Cleckley's employees: "The money that Cleckley made or was paid for the contract, what has to come out of that money?" McKissick's counsel objected to the question, stating: "Objection, Your Honor, that has nothing to do with this case." The trial court sustained the objection, and a bench conference followed. However, there was no follow-up proffer of testimony. Absent a proffer, there is nothing before us to review. *Vaughn v. City of Anderson,* 300 S.C. 55, 386 S.E.2d 297 (Ct.App.1989).

In any event, even if the judge erred, this error was harmless because Cleckley has not demonstrated prejudice. *State v. Mitchell,* 286 S.C. 572, 336 S.E.2d 150 (1985) (errors are harmless where they could not have reasonably affected the trial). In essence, Cleckley alleges the judge allowed McKissick to suggest to the jury the company made $475,000 for one week's work on a seven-mile stretch of road, while, in reality, resurfacing was only part of Cleckley's contractual duties. However, the judge allowed Cleckley to present evidence the contract required the company to work longer than seven days on more than fourteen miles of road. Clearly the jury could have inferred the contract covered more than the seven mile stretch.

### E. Mims's Prior Conviction

Cleckley claims the trial judge erred in allowing McKissick to impeach Harry Mims, Cleckley's president, by cross-examining him about his prior conviction in 1982 for violations of the Sherman Antitrust Act. As a result of the trial judge's ruling, Mims proffered testimony but did not testify. Cleckley claims the conviction, thirteen years prior to trial, was too remote to be probative.

Cleckley proffered Mims's testimony. He basically would have testified the work Cleckley did on the Sheldon Church Road project was confined to the roadway itself and did not

include the shoulder. A number of other witnesses testified in detail to this same evidence.

An appellant seeking reversal must show error and prejudice. *Wayne Smith Constr. Co. v. Wolman, Duberstein, & Thompson*, 294 S.C. 140, 363 S.E.2d 115 (Ct.App. 1987). Even if the trial judge erred here, Cleckley has not shown prejudice because Mims's testimony would have been cumulative to the testimony of several other witnesses. Accordingly, the error was harmless. *Gamble v. International Paper Realty Corp.*, 323 S.C. 367, 474 S.E.2d 438 (1996) (trial judge's refusal to allow deposition testimony, even if erroneous, did not prejudice appellant because the testimony would have been cumulative); *State v. Mitchell*, 286 S.C. 572, 336 S.E.2d 150 (1985) (errors are harmless where they could not have reasonably affected the trial).

### F. Barbara Smith Citation

Cleckley alleges McKissick's intentional injection into the trial that Barbara Smith did not receive a ticket for the accident should result in reversal. Counsel for McKissick asked the responding highway patrol officer if he gave anyone involved in this accident a citation. The officer responded he did not.[5]

Cleckley's attorneys immediately objected and the trial judge sustained the objection. Cleckley did not move for a corrective instruction or request a mistrial. Accordingly, Cleckley got what it asked for at trial and cannot now be heard to complain. *Kalchthaler v. Workman*, 316 S.C. 499, 450 S.E.2d 621 (Ct.App.1994) (where counsel voiced no complaint about the sufficiency of the trial judge's instructions given in response to his objection, appellate review is not available).

---

5. The result of a criminal suit may not normally be used as evidence in a purely civil suit involving the same facts. *South Carolina Bd. of Dental Examiners v. Breeland*, 208 S.C. 469, 38 S.E.2d 644 (1946). Just as a conviction or acquittal cannot be used, whether a police officer decided to ticket someone is not admissible.

Litigants are entitled to fair trials rather than perfect trials. *Ketterman v. South Carolina Farm Bureau Mut. Ins. Co.*, 302 S.C. 276, 395 S.E.2d 187 (Ct.App.1990). Here, after carefully reviewing the voluminous record on appeal, we are convinced Cleckley received a fair trial.

Accordingly, the decision in this case is

**AFFIRMED.**

CURETON and HUFF, JJ., concur.