514 S.E.2d 584

**The STATE, Respondent,**

v.

**Kelvin COOPER, Appellant.**

No. 24918.

Supreme Court of South Carolina.

Heard Feb. 2, 1999.
Decided March 15, 1999.

James C. Galmore, of Winnsboro, for appellant.

Attorney General Charles M. Condon; Deputy Attorney General John W. McIntosh; Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, Solicitor W. Townes Jones, IV, of Greenwood, for respondent.

TOAL, Justice:

In this criminal case, Kelvin Cooper ("Defendant") was convicted and sentenced for the murder of Charles H. Griffin ("Victim"). Defendant appeals his conviction.

### FACTUAL/PROCEDURAL BACKGROUND

On March 1, 1995, Victim's cousin, John Griffin, discovered Victim stabbed to death in Victim's house in Newberry, South Carolina. John Griffin testified that he found Victim lying

nude on the floor in the bedroom. Victim's throat had been cut and his face slashed. Victim had been cut, stabbed, and slashed over 70 times. Griffin immediately called the police.

Shortly after arriving at the scene, Newberry police developed Defendant as a suspect in the murder. Police visited Defendant at his mother's house and then escorted him to the police station. Officer Max Pickelsimer testified that Defendant's right hand was heavily bandaged. Defendant eventually removed the bandage, and police photographed cuts on his hand.

After being advised of his Miranda rights, Officer Pickelsimer asked Defendant if he wanted to make a statement. Defendant stated that he did. In a signed, written statement, Defendant denied any involvement in Victim's death. Defendant stated that on the night in question he was at his girlfriend's house until about 10:00 p.m. He then went to the store and stopped at his aunt's house to get out of the rain. He went back to his girlfriend's house at about 1:30 a.m. Afterwards, he returned home and went to bed. Defendant claimed he cut his hand while picking up a knife at his girlfriend's house. He again cut his hand on a knife the next morning while reaching for a cigarette lighter by the side of his bed.

After giving this initial statement, Defendant's mother told police that Defendant wanted to give another statement. Officer Charles Counts testified he tape-recorded Defendant's second statement. Defendant stated that after he left his girlfriend's house, he went to Victim's house to get a beer. Defendant claimed that while standing on Victim's porch, Victim came out and held a sharp object to Defendant's throat, forcing Defendant inside the house. Once inside, the two began to fight, resulting in Victim being cut. Defendant claimed Victim was still alive when he left the house.

On March 3, 1995, police interviewed Defendant for a third time. This interview was arranged to allow Newberry's Chief of Police, Louis J. Swindler, to question Defendant because Chief Swindler had been out of town during the initial part of the investigation. During the interview, Defendant gave another version of events. Defendant stated he went to Victim's house to get out of the rain and while standing on Victim's

porch, Victim came out and held a knife to Defendant's throat, forcing Defendant inside the house. Defendant claimed that once inside the house, Victim forced Defendant to have sex with him. After the sexual act was over, the two began to fight, and Defendant grabbed the knife, cutting himself on the hand in the process. Defendant then stabbed Victim two or three times. Upon leaving the house, Defendant grabbed Victim's "Louis Rich" I.D. card and some personal papers and then returned to his girlfriend's house.

On December 7, 1995, a jury convicted Defendant of murder, possessing a knife during the commission of a violent crime, and larceny. Defendant was sentenced to life imprisonment for the murder charge, five years consecutive for the weapons charge, and thirty days concurrent for larceny. Defendant appeals, raising the following issues:

(1) Did the trial court err in failing to grant Defendant a new trial based on prejudicial comments by the trial judge throughout the trial?

(2) Did the trial court err in excluding exculpatory evidence pursuant to *State v. Doctor*[1]?

(3) Did the trial court err in failing to grant a mistrial based on outside influence on a juror?

(4) Did the trial court err in failing to grant a directed verdict on the charge of murder?

(5) Were the solicitor's closing arguments sufficiently prejudicial to warrant a new trial?

### LAW/ANALYSIS

#### A. COMMENTS BY TRIAL COURT

■ Defendant argues that his conviction should be reversed because the trial judge made prejudicial comments toward defense counsel which influenced the verdict reached by the jury. Defendant further contends that prejudicial comments made to defense counsel outside the presence of the jury had the effect of prohibiting defense counsel from presenting an adequate defense. We disagree.

---

1. 306 S.C. 527, 413 S.E.2d 36 (1992).

Defendant cites to approximately twenty instances in the record where he contends the trial judge made prejudicial comments toward defense counsel. Defendant does not contend that any of the rulings constituted legal error by the trial judge. Rather, he argues the cumulative effect of the comments prejudiced the verdict because they tended to impugn the credibility of defense counsel by insinuating lack of legal skill. We have examined each of the instances about which appellant complains. Each involves a situation in which the trial judge and defense counsel are interacting with regard to evidentiary or testimonial rulings. On each complained of instance, the trial judge has either ruled against counsel, asked counsel to avoid repetitive questions, asked counsel for clarification, or declined a request by defense counsel.

█ It is well settled that a trial judge must act with absolute impartiality in the performance of judicial duties. *State v. Pace*, 316 S.C. 71, 447 S.E.2d 186 (1994); Canon 3 of Rule 501, SCACR. In *Pace*, this Court granted a new trial where the trial court commented on defense counsel's age and gender. The Court found that the remarks of the trial court tended to impugn the credibility of trial counsel and to diminish her in the eyes of the jury. Further, in *State v. Simmons*, 267 S.C. 479, 229 S.E.2d 597 (1976), this Court found reversible error where the trial judge threatened defense counsel with a jail sentence, immediately after which counsel proceeded no further with the arguments. The Court concluded that the remarks tended to impugn the credibility of defense counsel.

In other instances, this Court has found the trial court's comments to defense counsel to be harmless. *See, e.g., State v. DeBerry*, 250 S.C. 314, 157 S.E.2d 637 (1967) (holding that trial judge's admonition to defense counsel to be brief and stop wasting court's time was not abuse of discretion nor prejudicial to the rights of defendant). Moreover, there is generally no prejudice when the trial court's hostile comments are made outside the jury's presence. *See Graves v. State*, 309 S.C. 307, 422 S.E.2d 125 (1992).

In the instant case, the trial judge's comments and rulings were routine. None of the exchanges involved any improper, personal comment about defense counsel, nor did the com-

ments tend to impugn counsel's credibility or diminish him in the eyes of the jury. Many of the comments were innocuous or merely explanatory of the trial court's ruling and were therefore permissible. *See State v. Mishoe,* 198 S.C. 215, 17 S.E.2d 142 (1941) (holding that remarks made by the judge in the course of a trial need not be confined in such narrow limits as to prevent him from stating his reasons for his rulings). Some of the comments were made outside the presence of the jury, and therefore, could not affect the verdict. *See Graves, supra.* Further, the contention that these comments nonetheless inhibited defense counsel is not supported by the record. In sum, these were instances in which the trial judge made routine rulings against defense counsel over the course of a four-day murder trial. There was no resulting prejudice to Defendant.

We therefore affirm the trial court on this issue. *See State v. Bridges,* 278 S.C. 447, 298 S.E.2d 212 (1982) (holding that, in general, the conduct of a criminal trial is left largely to the sound discretion of the presiding judge, and the appellate court will not interfere unless it clearly appears that rights of the complaining party were abused or prejudiced in some way).

## B. EXCLUSION OF EVIDENCE

Defendant argues that the trial court erred in characterizing evidence as exculpatory and excluding it pursuant to *State v. Doctor,* 306 S.C. 527, 413 S.E.2d 36 (1992). At trial, Defendant proffered the testimony of Solomon Nelson who testified that while in a restaurant, he overheard Shirley Gilmore tell Peter Wayne Marshall that Gilmore, Dottie Suber, and Defendant's girlfriend had murdered Victim. Marshall admitted having a conversation with Gilmore about the murder but denied that Gilmore told him she killed Victim. Marshall testified that Gilmore simply told him that Defendant was not alone in killing Victim. Finally, Gilmore proffered testimony, denying she told Marshall that she killed Victim. Gilmore claimed she only told Marshall that she believed Defendant had not committed the crime.

After the testimony was proffered, defense counsel stated that he intended to first call Gilmore and then impeach her

with Nelson's testimony. The solicitor objected on the basis of hearsay. The trial court sustained the objection pursuant to Rule 804(b)(3), SCRE, and *State v. Doctor*. The trial court further stated: "You see why you can't do that? You can't call a witness to come up and to deny that she ever made that statement she was involved in a murder of somebody and then bring somebody else to say that—it doesn't work that way."

In *Doctor*, this Court held that out-of-court statements against penal interest made by an unavailable declarant are admissible at trial. However, if offered to exculpate the accused in a criminal trial, they are admissible only if corroborating evidence clearly indicates the trustworthiness of the statements. Rule 804(b)(3), SCRE, codified this exception to the hearsay rule. Rule 804(b)(3) provides:

(b) **Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: ... (3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Rule 804(b)(3), SCRE.

Under Rule 804, Defendant could not have called Nelson to testify concerning Gilmore's statements, since Gilmore was available to testify. However, it is clear from the trial transcript that the Defendant intended to first call Gilmore and then impeach her denial with Nelson's testimony. In other words, Defendant argues that if Gilmore testified consistent with her proffered testimony, Nelson's testimony would have been admissible as a prior inconsistent statement.[2]

---

2. Rule 801(d)(1)(A), SCRE, provides:

 (d) **Statements Which Are Not Hearsay.** A statement is not hearsay if—(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the state-

Defendant admits that the sole purpose for calling Gilmore was to impeach her with Nelson's testimony, thereby supplying substantive evidence of her guilt in committing the crime. However, this Court has imposed strict limits on the admissibility of third-party guilt. In *State v. Gregory,* 198 S.C. 98, 16 S.E.2d 532 (1941), this Court held:

> The evidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.... *But before such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party. Remote acts, disconnected and outside the crime itself, cannot be separately proved for such a purpose.* An orderly and unbiased judicial inquiry as to the guilt or innocence of a defendant on trial does not contemplate that such defendant be permitted, by way of defense, to indulge in conjectural inferences that some other person might have committed the offense for which he is on trial, or by fanciful analogy to say to the jury that someone other than he is more probably guilty.

*Gregory,* 198 S.C. at 104–05, 16 S.E.2d at 534–35 (citation omitted) (emphasis added); *accord State v. Parker,* 294 S.C. 465, 366 S.E.2d 10 (1988); *State v. Caulder,* 287 S.C. 507, 339 S.E.2d 876 (Ct.App.1986).

In the instant case, Gilmore admitted having a conversation with Marshall concerning Defendant's case, but denied admitting to the crime. Aside from Nelson's assertions, there was no credible evidence linking Gilmore to Victim's murder. Gilmore testified *in camera* that she had never been to Victim's house. Thus, there was no evidence that tended clearly to point out that Gilmore was guilty of the crime. Nelson's

---

ment, and the statement is (A) inconsistent with the declarant's testimony....

testimony would therefore be prohibited under *Gregory, su-pra.*

■■ Yet, even if testimony is inadmissible as substantive evidence of third-party guilt, it may still be admissible for impeachment purposes. *See State v. Fossick,* 333 S.C. 66, 508 S.E.2d 32 (1998). However, Gilmore was not relevant to the instant case except to provide testimony of her own culpability.[3] Defendant, expecting Gilmore to deny making the statement if she testified, then wanted to supply extrinsic evidence of a prior inconsistent statement. In other words, Defendant wanted to call an otherwise irrelevant witness so that testimony of that witness's guilt could come in under the guise of a prior inconsistent statement. Such use of a prior inconsistent statement serves *only* to prove third-party guilt, and therefore, cannot be justified on the ground of impeachment alone. Since the testimony would be improper as substantive evidence of third-party guilt, the trial court properly excluded the evidence.

### C. OUTSIDE INFLUENCE ON JUROR

■ Defendant argues that the trial court erred in failing to grant a mistrial based on outside influence on a juror. We disagree.

At trial, the solicitor informed the trial court that a juror had been seen waving to Corey Edwards, a spectator in the audience. Edwards was also overheard stating that Defendant's girlfriend should be on trial. Further, Edwards was seen talking to the juror during a break in the trial. Defense counsel moved for a mistrial.

The trial judge called Edwards to the stand and questioned him about the incident outside the presence of the jury.

---

3. In *State v. Fossick,* a State's witness testified concerning the circumstances surrounding the murder. On cross-examination, defense counsel asked the witness if he had previously told his girlfriend that he was the one who killed the victim. The witness denied making the statement. Defense counsel then sought to admit extrinsic evidence of a prior inconsistent statement made by the witness. This Court held that even if the evidence was inadmissible as evidence of third-party guilt, it was admissible for impeachment purposes. However, unlike the instant case, the witness in *Fossick* testified for the State concerning circumstances surrounding the crime.

Edwards stated that the juror was married to his cousin. He admitted having a conversation with the juror, but denied talking to the juror about Defendant's case. He further stated that he had told the assistant solicitor, not Defendant, that Defendant's girlfriend should be on trial. The assistant solicitor confirmed Defendant's version on this point. The trial court also permitted defense counsel to extensively question Edwards about the incident. Additionally, the trial judge asked the jurors to write him a note if anyone had attempted to discuss the case with them. There was no response from the jury.

In a criminal prosecution, the conduct of the jurors should be free from all extraneous or improper influences. *State v. Kelly*, 331 S.C. 132, 502 S.E.2d 99 (1998). Unless the misconduct affects the jury's impartiality, it is not such misconduct as will affect the verdict. *Id.* The granting or refusing of a motion for a mistrial lies within the sound discretion of the trial court and its ruling will not be disturbed on appeal unless an abuse of discretion amounting to an error of law occurs. *Id.*

On appeal, Defendant does not contend that the trial court should have granted a mistrial. Rather, he argues the trial court should have done something more to investigate the alleged misconduct. Initially, it is hard to conceive of anything more the trial court could have done to investigate the incident. Moreover, defense counsel never requested that the trial court do anything else. Nevertheless, there simply was no showing of any outside influence on the jury which resulted in prejudice. We therefore affirm the trial court on this issue. *See Kelly, supra* (holding that a juror's possession of a religious pamphlet on the death penalty did not warrant reversal).

## D. DIRECTED VERDICT ON THE MURDER CHARGE

Defendant argues that the trial court erred in failing to grant a directed verdict on the murder charge since the evidence raised only a mere suspicion of guilt. We disagree.

In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State, and if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt

of the accused, an appellate court must find that the case was properly submitted to the jury. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998). In ruling on a motion for directed verdict, the trial court is concerned with the existence of evidence, not its weight. *Id.*

In the instant case, there was substantial circumstantial evidence of Defendant's guilt. There was testimony that Defendant told police that he had a fight with Victim on the night of the murder and slashed Victim two or three times with a knife. There was evidence that Defendant cut his hands on a knife as a result of stabbing Victim. Further, there was expert testimony that Defendant's blood matched blood found on Victim's body. We therefore find the trial court correctly denied Defendant's motion for a directed verdict on the murder charge.

### E. CLOSING ARGUMENTS

Defendant argues his conviction should be reversed based upon (1) the solicitor's inflammatory comments during closing arguments, and (2) the solicitor's comments on Defendant's silence. We disagree.

#### 1. *Inflammatory Comments*

 Defendant contends the cumulative effect of the following comments prejudiced the defense: First, in commenting on Defendant's initial statement given to police, the solicitor stated: "Does that look like you cut your right hand reaching for a cigarette lighter? Does that look like you cut your hand slipping down across a blade from stabbing someone?" The solicitor later stated: "And then his mother comes to an officer to get Captain Counts to talk to her son again. He told a little more." Defendant contends the implication was that he conspired with his mother in giving a second voluntary statement to the police. Second, the solicitor stated: "[Defendant] cut his hand, and he is standing over that victim." Finally, the Solicitor argued:

And look at those wounds. Remember the testimony from Dr. Sexton. Back and forth. From right to left. To left to right. They went in both directions. What does that indicate to you, ladies and gentlemen? It indicates a sawing

motion, and the mutilation to the face. What is more malicious, ladies and gentlemen, than to stab a man and to saw a man's neck and to cut his face 71 times and then stand over him and watch him die? That is murder. That is murder in this state and any state.

A solicitor's closing argument must be carefully tailored so it does not appeal to the personal biases of the jurors. *State v. Linder*, 276 S.C. 304, 278 S.E.2d 335 (1981). The argument may not be calculated to arouse the jurors' passions or prejudices and its content should stay within the record and its reasonable inferences. *Id.; see State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997). However, a solicitor has a right to state his version of the testimony and to comment on the weight to be given such testimony. *State v. Caldwell*, 300 S.C. 494, 388 S.E.2d 816 (1990).

In the instant case, the solicitor's comments were based upon evidence in the record and reasonable inferences therefrom. The solicitor's statement that Defendant stood over Victim after stabbing him is supported by evidence that some of the blood found on Victim's body matched Defendant's blood, and Officer Counts testimony that he found "uniform drops of blood that were consistent when falling at a 90 degree angle straight to the abdomen area of the victim in three specific areas." Further, the evidence revealed Victim's face and neck had been brutally slashed and cut over 70 times. We therefore affirm the trial court on this issue.

### 2. Comments on Silence

Defendant contends the following comments by the solicitor improperly referred to Defendant's silence: "There's no testimony in this record of any other knife being used;" "We don't know what clothes he was wearing. There were only two people in there, ladies and gentlemen, the defendant and Chuck Griffin." After the first comment, defense counsel objected, and the trial judge gave the following curative instruction: "To the extent that [the solicitor's] comments may have implied to you that the defendant has any burden of coming forward with any evidence, you must disregard those comments, because he has no such burden." Defense counsel raised no contemporaneous objection to the solicitor's second

comment.[4] *See State v. Robinson,* 238 S.C. 140, 119 S.E.2d 671 (1961) (issue is not preserved for review where there is no contemporaneous objection to solicitor's comments).

It is impermissible for the prosecution to comment, directly or indirectly, upon the defendant's failure to testify at trial. *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997) (citing *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)); *Robinson, supra.* However, improper comments on a defendant's failure to testify do not automatically require reversal if they are not prejudicial to the defendant. *Johnson, supra.*

In the instant case, it is questionable whether the solicitor's comments either directly or indirectly referred to Defendant's failure to testify or present a defense at trial. However, even if a negative inference could have been made by the jury, the trial judge immediately gave a curative instruction following defense counsel's objection. Further, the trial court charged the jury, after closing arguments, that Defendant did not have the burden of proving his innocence, and the jury could not consider Defendant's failure to testify in its deliberations. We find that any prejudice to Defendant was cured by the trial court's instructions to the jury. *See Johnson, supra* (holding that even assuming *arguendo* the comment was improper, the trial court's instruction to the jury that it could not consider Johnson's failure to testify in any way and could not use it against him was sufficient to cure any potential error); *State v. Plath,* 281 S.C. 1, 313 S.E.2d 619 (1984) (holding that solicitor's comment that defendants were not testifying was cured by solicitor's apology and judge's charge).

## CONCLUSION

Based upon the foregoing, we **AFFIRM** the trial court on all issues.

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

4. Defense counsel had a standing objection to references made by the solicitor to things not in the record. Defense counsel renewed this objection at the end of the solicitor's arguments. However, this objection did not relate to comments on Defendant's silence.