623 S.E.2d 100

**The STATE, Respondent,**

v.

**William Max NICHOLSON, Appellant.**

**No. 4011.**

Court of Appeals of South Carolina.

Heard June 7, 2005.

Decided July 5, 2005.

Order Denying Rehearing Dec. 5, 2005.

---

Larry C. Brandt, of Walhalla, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor Christina T. Adams, of Anderson, for Respondent.

GOOLSBY, J.:

William Max Nicholson appeals his convictions for three counts of second-degree criminal sexual conduct. We affirm.

## FACTS

The trial in this case revolved around the accusations of a young adult male who was born March 25, 1980. In late 2001, he told his mother that Nicholson sexually assaulted him several years earlier.

On December 21, 2001, the accuser gave a written statement about the alleged assaults to the Oconee County Sheriff's Department. According to the statement, the accuser first met Nicholson, a high school science teacher, when he was a ninth-grade student in Nicholson's physical science class at West Oak High School. The accuser participated in tasks such as setting up labs and cleaning up chemical spills. Eventually, he began to receive small sums of money from Nicholson for this work. At that time, the accuser was not approached in a sexual manner.

After the school year ended, the accuser, at Nicholson's request, began doing odd jobs around Nicholson's house and receiving payment from Nicholson for his services. Although the accuser could not remember exactly how Nicholson approached him, he related that the "incidents" began only after "a few times of doing the work" and that they were "in the nature of oral sex" performed by Nicholson on him.

The following school year, the accuser was initially enrolled at Walhalla High School, but later transferred back to West Oak High School. After he transferred back to West Oak, he visited Nicholson's classroom frequently even though he did not have Nicholson for class. During the summer, the accuser

helped Nicholson move to another residence. Although the move was completed before the end of the summer, Nicholson offered the accuser additional work, promising the pay would be fair and a bonus was possible. Throughout the completion of those tasks, the oral sex continued, probably at least every other day, for the duration of the summer. When the accuser reached eleventh grade, he continued his relationship with Nicholson and claimed that he received at least a thousand dollars per month for his companionship. The incidents became less frequent when the accuser reached twelfth grade, and he surmised this was because he was approaching adulthood and Nicholson's "fascination was strictly adolescent males." Even so, the accuser claimed that he visited Nicholson at various times in the month preceding the investigation and that Nicholson paid him a total of about one thousand dollars during that time.

As part of the investigation, law enforcement officers outfitted the accuser with a recording device and sent him to Nicholson's home on two occasions for the express purpose of eliciting incriminating statements from Nicholson. They also videotaped Nicholson's home while Nicholson and his accuser were inside talking and filmed the accuser on the porch talking with Nicholson as the accuser was preparing to leave the premises. Although Nicholson made no direct admissions on the tape, he did not refute statements by the accuser.

Authorities arrested Nicholson on January 2, 2002. After a preliminary hearing on February 22, 2002, and February 26, 2002, the Oconee County Grand Jury issued three indictments against Nicholson for second-degree criminal sexual conduct, charging him with committing acts of fellatio on his accuser during the periods of June 1 through June 30, 1995; July 1 through July 31, 1995; and August 1 through August 18, 1995.

After a jury trial commencing October 21, 2002, Nicholson was convicted on all three indictments and sentenced to twelve years. After the trial judge denied his post-trial motions, Nicholson filed this appeal.

## LAW/ANALYSIS

1. Nicholson argues the trial judge should have dismissed the indictments because the time periods alleged were

not sufficiently specific. In particular, he complains that without more specific dates in the indictments, he could not avail himself of the defense of alibi and other testimony that could have refuted his accuser's claims or impeached his accuser's credibility. We reject these arguments.

"Where time is not an essential element of the offense, the indictment need not specifically charge the precise time the offense allegedly occurred."[1] "[T]he sufficiency of an indictment must be judged from a practical standpoint, with all of the circumstances of the particular case in mind."[2]

In this case, time was not an essential element of the charged offenses.[3] Moreover, although Nicholson argued in his brief that the trial judge should have, in the alternative, required the State to make the dates of the offenses more definite and certain, we do not see any indication in the record that this issue was clearly raised at trial.[4]

2. We disagree with Nicholson's argument that the trial judge erred in denying his directed verdict motion.

Under Rule 19(a) of the South Carolina Rules of Criminal Procedure, "the court shall direct a verdict in the defendant's favor on any offense charged in the indictment after the evidence on either side is closed, if there is a failure

1. *State v. Wingo*, 304 S.C. 173, 175, 403 S.E.2d 322, 323 (Ct.App.1991).

2. *State v. Wade*, 306 S.C. 79, 83, 409 S.E.2d 780, 782 (1991) (citing *State v. Adams*, 277 S.C. 115, 125, 283 S.E.2d 582, 588 (1981)).

3. *Cf. State v. Thompson*, 305 S.C. 496, 501, 409 S.E.2d 420, 423 (1991) ("The specific date and time is not an element of the offense of first degree criminal sexual conduct."); 65 Am. Jur. 2d *Rape* § 34, at 582 (2001) ("Because time is not an essential ingredient of either forcible or statutory rape, the exact date of the commission of the offense need not be alleged unless a statute provides otherwise."); 75 C.J.S. *Rape* § 45, at 515–16 (1952) (stating it is proper and sufficient to prove the commission of a sexual assault on any day before the indictment and within the period of limitations and, in cases involving a victim under the age of consent, on a day when the victim was still under the statutory age).

4. *See State v. Rogers*, 361 S.C. 178, 183, 603 S.E.2d 910, 913 (2004) (stating that an issue must be "raised to the trial court with sufficient specificity" to be preserved for appellate review) (citing Jean Hoefer Toal, et al., *Appellate Practice in South Carolina* 57 (2d ed. 2002)).

of *competent* evidence tending to prove the charge in the indictment." [5] In considering a directed verdict motion, the court "shall consider only the existence or non-existence of the evidence and not its weight." [6] "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury." [7]

At the close of the testimony, Nicholson moved for a directed verdict on the ground that there was "no credible evidence as to all the elements upon which the burden of proof lies upon the State." On appeal, he alleges there were. inconsistencies and time gaps in the accuser's testimony and suggests, among other things, that the evidence supported a finding that the alleged abuse occurred after the accuser's sixteenth birthday and was therefore outside the statutory age limit for the offense with which he was charged.[8] We agree with the trial judge, however, that, viewing the evidence in the light most favorable to the State, Nicholson was not entitled to a directed verdict.

The accuser testified Nicholson performed oral sex on him "throughout the summer" of 1995. Specifically, he averred the oral sex happened in June, July, and August of 1995, and at a frequency of two to three times per week. There was no dispute that the accuser's date of birth was March 25, 1980, which would have made him under the age of sixteen during the summer of 1995. It further appears uncontested that he was younger than Nicholson and had been a student in Nicholson's class, which would have placed Nicholson in a "position of familial, custodial, or official authority to coerce the victim to submit." [9] Any concerns about contradictory statements by the accuser, whether on the stand or outside

---

5. Rule 19(a), SCRCrimP (emphasis added).

6. *Id.*

7. *State v. Cherry*, 361 S.C. 588, 593–94, 606 S.E.2d 475, 478 (2004).

8. Nicholson was charged under South Carolina Code section 16–3–655(3), which requires that the victim be at least fourteen years of age but less than sixteen years of age. S.C.Code Ann. § 16–3–655 (2003).

9. *Id.*

the courtroom setting, were ultimately about his credibility and therefore in the domain of the jury.[10]

3. Nicholson also contends he was deprived of a fair trial because the presiding trial judge instructed the solicitor on how to introduce a piece of evidence against him. We disagree.

During the trial, the solicitor sought to introduce into evidence a composite audiotape recording of conversations between Nicholson and his accuser that took place on December 20 and 27, 2001. While the solicitor was attempting to lay a foundation for admission of the recording, the trial judge, apparently dissatisfied with the solicitor's line of questioning, undertook to advise her outside the presence of the jury about the particulars that he viewed as necessary steps in this procedure. Nicholson objected to the "depth and detail" of the assistance to the State. After a recess, the solicitor, following the trial judge's advice, made a successful proffer of the tape.

We find no error in the trial judge's intervention in this case. In *State v. Gaskins,* the supreme court, quoting *State v. Anderson,* reiterated the following "duties and limitations" that a trial judge must observe while conducting a trial:

> A grave responsibility rests upon a trial judge. It is his duty to see to it that justice be done in every case, if it can be done according to law; and, *if he thinks that the attorney for either party, either from inadvertence or any other cause, has failed to ask the witnesses the questions necessary and proper to bring out all the testimony which tends to ascertain the truth of the matter under investigation, we can see no legal objection to his propounding such questions;* but, of course, he should do so in a fair and impartial

---

**10.** *See State v. Buckmon,* 347 S.C. 316, 324 n. 6, 555 S.E.2d 402, 406 n. 6 (2001) (mentioning whether a witness was credible goes to the weight of the evidence and is therefore not considered by the trial court when it considers a directed verdict motion); *State v. Copeland,* 278 S.C. 572, 581, 300 S.E.2d 63, 69 (1982) (allowing testimony of prior inconsistent statements to be used as "substantive evidence when the declarant testifies at trial and is subject to cross examination"); *State v. Crawford,* 362 S.C. 627, 634, 608 S.E.2d 886, 890 (Ct.App.2005) (noting that a contradiction between a witness's "sworn statement to police and his later testimony in court is a matter of weight for the jury to decide").

manner, and should not by the form or manner of his questions express or indicate to the *jury* his opinion as to the facts of the case, or as to the weight or sufficiency of the evidence.[11]

In our view, the trial judge did not exceed the limits recognized in *Gaskins*. The jury was absent from the courtroom when the exchange at issue took place and thus could not have been affected by the trial judge's remarks. Moreover, the trial judge, when explaining to counsel what he required to lay a foundation, did not show any favoritism or otherwise indicate he had an opinion about the case. We therefore hold that, contrary to Nicholson's argument, the instructions did not result in the trial judge's assumption of an adversarial role in the case.[12]

■ 4. Nicholson next argues the trial judge erred in refusing to strike a juror for cause. We disagree.

In the voir dire, the trial judge asked if any members of the jury panel or their close personal friends or family members had been victims or claimed to be victims of any type of sexual offense or child abuse. Among those answering the question in the affirmative was Juror Number 98, who advised the trial judge that his sister-in-law had been raped and the perpetrators "got away with it" and "[i]t was pretty ugly." Notwithstanding this information, Juror Number 98 was not dismissed for cause. Nicholson argues on appeal that, during jury selection, he was forced to use one of his peremptory chal-

---

11. *State v. Gaskins*, 284 S.C. 105, 119, 326 S.E.2d 132, 140–41 (1985) (quoting *State v. Anderson*, 85 S.C. 229, 233, 67 S.E. 237, 238 (1910)), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (emphases added).

12. *See People v. Robinson*, 236 Ill.App.3d 313, 177 Ill.Dec. 244, 603 N.E.2d 25, 29 (1992) ("A trial judge may remind the prosecutor of the necessity to prove additional elements, examine witnesses to clarify material issues or eliminate confusion, and advise counsel on the proper phrasing of questions."); *Village of Lodi v. McMasters*, 31 Ohio App.3d 275, 511 N.E.2d 123, 124 (1986) ("During the trial, a judge may, in the interest of justice, act impartially in developing facts germane to an issue of fact to be determined by the jury."); 23A C.J.S. *Criminal Law* § 1180, at 51 (1989) (noting the trial judge "is the governor of the trial" and it is therefore "his duty[ ] to participate directly in the trial and to facilitate its orderly progress[ ] and insure that the issues are clearly presented to the jury").

lenges to excuse this particular juror, which ultimately result-
ed in the seating of another juror whom he maintains he would
have excused but for the exhaustion of all his peremptory
strikes.

Nicholson's argument before the trial judge and on appeal
focuses on the juror's apparently "deeply troubled" demeanor
and answer to a follow-up question from the trial judge that
suggested that he could not be fair and impartial. In the
colloquy, it is evident that, when initially examining the juror,
the trial judge asked two questions in immediate succession.
Whereas the first question called for a negative response from
a qualified juror, the second question called for an affirmative
answer. To clear up the confusion, the trial judge impressed
upon the juror the importance of a fair trial for both sides,
inquiring of him, "Could you do that?" The juror responded
affirmatively. The trial judge also rephrased the other ques-
tion, asking the juror, "And it would not interfere with your
ability to be fair to the State and the defendant?" To this
question the juror replied, "I don't think so." Based on these
exchanges, we hold the trial judge conducted an adequate
examination into the juror's impartiality and acted within his
discretion in qualifying Juror Number 98.[13]

5. During closing argument, the solicitor referred to
Nicholson's counsel as an "experienced defense attorney,"
which, Nicholson contends, may have suggested to the jury he
was guilty because he hired experienced counsel. The solici-
tor also made references about "justice for all" and advised
the jurors that, in reaching a verdict, they could consider the
trauma of the trial on Nicholson's accuser. Nicholson asserts
the trial judge erred in denying his motion for a mistrial based
on these allegedly improper comments. We find no abuse of

---

**13.** *See State v. George,* 323 S.C. 496, 503, 476 S.E.2d 903, 907 (1996)
("A venireperson must be excused only if her opinions would prevent or
substantially impair the performance of her duties as a juror in accor-
dance with her oath and instructions."); *State v. Tucker,* 320 S.C. 206,
211, 464 S.E.2d 105, 108 (1995) ("The determination whether a juror is
disqualified is within the discretion of the trial judge and will not be
reversed on appeal unless wholly unsupported by the evidence."); *id.*
("[I]n reviewing the trial judge's disqualification of prospective jurors,
the responses of a challenged juror must be examined in light of the
entire voir dire.").

discretion.[14] Nicholson failed to make a contemporaneous objection to either remark,[15] and, although the trial judge declined to declare a mistrial, he issued a curative instruction.[16]

6. We reject Nicholson's argument that the trial judge erred in refusing to grant his motion to suppress the testimony of an expert witness offered by the State or, in the alternative, to grant a continuance so he could obtain his own expert on the subject. The witness was called to testify about the general characteristics of a sex abuse victim. Nicholson contends the notice he received from the State about this witness was too close in time to the trial for him to prepare his defense. The State, however, is not required to provide its witness list to a criminal defendant,[17] and the disclosure in the present case of this witness to the defense before trial was nothing more than a professional courtesy. We therefore hold that the trial judge properly declined to suppress the expert testimony and acted within his discretion in refusing to continue the case.[18]

14. *See State v. Copeland*, 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996) ("The trial court has broad discretion when dealing with the propriety of the solicitor's argument, including the question of whether to grant a defendant's mistrial motion.").

15. *See In re McCracken*, 346 S.C. 87, 93, 551 S.E.2d 235, 238–39 (2001) (stating a contemporaneous objection is required to preserve issues regarding a closing argument for review); *State v. Moultrie*, 316 S.C. 547, 555–56, 451 S.E.2d 34, 39 (Ct.App.1994) (holding the lack of a contemporaneous objection could not be salvaged by a motion for a mistrial).

16. *See State v. Cooper*, 334 S.C. 540, 554, 514 S.E.2d 584, 591 (1999) (deeming the solicitor's impermissible closing remarks about the defendant's failure to present a case cured by the trial court's instructions).

17. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (requiring the State to divulge to a criminal defendant exculpatory or mitigating information); Rule 5, SCRCrimP (requiring the State to disclose certain statements of the defendant, the defendant's prior record, certain documents and tangible objects, and certain reports of examinations or tests).

18. *See State v. McMillian*, 349 S.C. 17, 21, 561 S.E.2d 602, 604 (2002) ("A trial judge's denial of a motion for continuance will not be disturbed absent a clear abuse of discretion.").

580

7. Next, Nicholson asserts the trial judge should have required the State to release records concerning two psychological evaluations that had been performed on his accuser during a family court proceeding between the accuser's parents. Nicholson further alleges the trial judge erred in limiting cross-examination of the accuser about his mental health history and in denying the defense "sufficient time and opportunity to effectively process certain information." We find no error.

The records that Nicholson sought were not in the State's possession; and the trial judge did not allow full access of the documents to either the State or to the defense. After receiving the records under seal and reviewing them for admissibility, the trial judge "declined to admit it based on the confidential nature of the report" and further noted that any probative value in the records would be outweighed by the fact that they were "remote" and "somewhat cumulative." We hold the trial judge followed the correct procedure in determining whether Nicholson could have access to his accuser's psychological evaluations and whether the evaluations were admissible.[19] Moreover, we have reviewed the records, which were submitted to this court under seal, and concur with the trial judge that the evaluations were so remote in time they would render questionable any probative information they might yield in the present case.

8. Nicholson asserts recordings by law enforcement of the conversations between him and his accuser should have

---

**19.** *See* S.C.Code Ann. § 16-3-659.1(1) (2003) (providing that evidence of specific incidents of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct are not admissible in prosecutions for criminal sexual conduct); *id.* § 19-11-95(D)(1) (Supp. 2004) (stating a mental health provider shall reveal confidences "when required ... by court order for good cause shown to the extent that the patient's care and treatment or the nature and extent of his mental illness or emotional condition are reasonably at issue in a proceeding"); *id.* § 44-115-40 (2002) (prohibiting a physician from releasing medical records without the written consent of the patient); *State v. Bryant,* 307 S.C. 458, 461, 415 S.E.2d 806, 808 (1992) (noting the State is required to disclose evidence in its *possession* favorable to the accused and material to guilt or punishment and stating that the trial court must inspect contested material to determine if it should be available to a defendant under a *Brady* request).

been suppressed because they amounted to a denial of his right to counsel, an invasion of his privacy, and an unreasonable search and seizure. We disagree. When the tapes were made, Nicholson was not in police custody and had not been indicted.[20] In addition, there was no dispute that the accuser in this case consented to have his conversations with Nicholson recorded.[21]

9. Finally, Nicholson contends the cumulative effect of the errors he has alleged warrants a new trial.[22] Because, however, we have determined that the trial judge did not err in any of the particulars alleged in this appeal, we likewise hold the cumulative error doctrine is inapplicable.

**AFFIRMED.**

HUFF and KITTREDGE, JJ., concur.

## ORDER DENYING PETITION FOR REHEARING

GOOLSBY, J.:

The appellant William Max Nicholson petitions this court for a rehearing. After careful consideration of the petition, the court concludes there is no basis for granting a rehearing.

The court acknowledges it did not give a full treatment to Nicholson's argument that the trial judge erred in limiting

---

**20.** *See State v. Owens,* 346 S.C. 637, 661, 552 S.E.2d 745, 758 (2001) ("The Sixth Amendment right to counsel attaches when adversarial judicial proceedings have been initiated and at all critical stages."), *overruled on other grounds by State v. Gentry,* 363 S.C. 93, 610 S.E.2d 494 (2005); *State v. Sprouse,* 325 S.C. 275, 282, 478 S.E.2d 871, 875 (Ct.App.1996) (stating the focus of an investigation on a suspect who is not in custody does not trigger *Miranda* warnings).

**21.** *State v. Andrews,* 324 S.C. 516, 519–21, 479 S.E.2d 808, 810–11 (Ct.App.1996) (holding a tape of a telephone call was admissible because one party to the call consented to the recording).

**22.** *See State v. Johnson,* 334 S.C. 78, 93, 512 S.E.2d 795, 803 (1999) (noting the cumulative error doctrine provides relief when a combination of errors, each of which may be considered insignificant by itself, has the collective effect of preventing a party from receiving a fair trial).

582

defense counsel's cross-examination of his accuser about the accuser's sexual abuse history. We take this opportunity to advise that, after examination of the record citations provided in Nicholson's brief as well as our own review of the transcript, we are unable to ascertain that the issue of the scope of cross-examination had been raised to and ruled on by the trial judge or that the proposed cross-examination had been proffered at trial. *See* Rules 208(b)(4) and 211(b)(1), SCACR (requiring briefs to provide references to where relevant objections and rulings occurred in the transcript); *State v. Hicks*, 330 S.C. 207, 216, 499 S.E.2d 209, 214 (1998) (stating that to be preserved for appeal, an issue must be raised to and ruled on by the trial judge); *Baber v. Greenville County*, 327 S.C. 31, 41, 488 S.E.2d 314, 319 (1997) ("Absent a proffer, it is impossible for this Court to determine the effect of the excluded testimony."); *McKissick v. J.F. Cleckley & Co.*, 325 S.C. 327, 344-45, 479 S.E.2d 67, 76 (Ct.App.1996) (noting the appellant failed to "point to specific objections and rulings" as required by the South Carolina Appellate Court Rules, thus leaving the court to " 'grope in the dark' concerning the specific allegations of error") (quoting *Connolly v. People's Life Ins. Co. of S.C.*, 299 S.C. 348, 352, 384 S.E.2d 738, 740 (1989)). We therefore conclude that, although the argument concerning the scope of the cross-examination of Nicholson's accuser may have been overlooked in the prior opinion, the omission did not concern a material fact or point of law so as to warrant rehearing the case.

It is therefore ordered the petition for rehearing is denied.

**REHEARING DENIED.**

HUFF and KITTREDGE, JJ., concur.