785 S.E.2d 387

**The STATE, Respondent,**

v.

**Gerald BARRETT, Jr., Appellant.**

**Appellate Case No. 2013–002158.
No. 5395.**

Court of Appeals of South Carolina.

Heard Nov. 10, 2015.
Decided March 23, 2016.
Rehearing Denied May 20, 2016.

---

Appellate Defender, David Alexander, of Columbia, for appellant.

Attorney General, Alan McCrory Wilson and Assistant Attorney General, William M. Blitch, Jr., both of Columbia; and Solicitor Isaac McDuffie Stone, III, of Bluffton, for respondent.

GEATHERS, J.

Gerald Barrett appeals his conviction for a lewd act upon a minor, arguing the trial court erred in (1) qualifying Kendra Twitty as an expert "mental health professional, specifically in the area of child sexual abuse characteristics," and (2) failing to grant a continuance for him to obtain an expert to dispute her testimony. We affirm.

## FACTS/PROCEDURAL HISTORY

A grand jury indicted Barrett for criminal sexual conduct (CSC) with a minor, lewd act upon a minor, and kidnapping for acts he allegedly committed upon Victim. Barrett proceeded to trial and immediately before a Monday morning pretrial motions hearing, he moved for a continuance to obtain an expert in Child Sexual Assault Accommodation Syndrome, arguing the State did not disclose its intention to introduce evidence regarding Child Sexual Assault Accommodation Syndrome until the prior Thursday. The trial court denied the motion because Twitty was previously named as the forensic interviewer assigned to this case. Barrett also moved to prohibit the qualification of Twitty as an expert, use of the term "forensic interviewer," and Twitty's testimony in its entirety, arguing the testimony would amount to vouching or

bolstering Victim's testimony. The trial court withheld ruling until after hearing testimony from Victim.

After Victim's testimony, outside the presence of the jury, the State sought to qualify Twitty as an "expert regarding the behavior of and trauma of child sexual abuse victims." The State offered to avoid using the term "Child Sexual Abuse Accommodation Syndrome" as it believed avoiding the term would alleviate any potential confusion by the jury. After additional arguments, the State explained it did not intend to offer her as an expert regarding the syndrome; instead, it sought to offer her as an expert "practitioner of mental health specifically dealing with children [victimized by] child sexual assault." Over Barrett's objection, the trial court ruled Twitty could discuss general behavioral evidence regarding delayed disclosure. The State noted it would first question Twitty regarding the *Kromah*[1] factors for Victim's forensic interview, and then it would seek to qualify Twitty as a mental health expert and offer her expert testimony.

In the presence of the jury, Twitty testified she was a forensic interviewer and counselor/therapist at a children's advocacy and rape crisis center. She described the forensic interview she conducted with Victim. She also summarized her education, training, and experience in the mental health field. The State sought to admit her as an expert "mental health professional working with victims of child sexual abuse and trauma." Barrett objected and proceeded to voir dire. Following voir dire, Barrett again objected to Twitty's qualification. Ultimately, the trial court qualified her as an expert "mental health professional, specifically in the area of child sexual abuse characteristics."

A jury found Barrett guilty of a lewd act upon a minor. The jury found Barrett not guilty of kidnapping and was unable to reach a unanimous decision as to the CSC with a minor charge. The trial court sentenced him to twelve years' imprisonment, suspended upon nine years' imprisonment and four years' probation. The trial court also subjected him to mandatory GPS monitoring, required him to complete a sexual

---

1. *State v. Kromah*, 401 S.C. 340, 360, 737 S.E.2d 490, 500–01 (2013) (outlining the parameters for testimony from forensic interviewers).

offender treatment program, and placed him on the sex offender registry. This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err in qualifying an expert witness and admitting her testimony?
2. Did the trial court err in failing to grant a continuance?

## LAW/ANALYSIS

### I. Expert Witness

Barrett argues the trial court erred in qualifying Twitty as an expert mental health professional in the area of child sexual abuse characteristics and admitting her testimony. We disagree.

Initially, despite the State's contentions otherwise, we find the issue is preserved. During trial, immediately before Twitty's testimony, the State noted it would seek to qualify Twitty as a mental health expert after Twitty addressed the *Kromah* factors related to Victim's interview. Barrett clarified his understanding that the qualification "is only related to delayed disclosure." Thereafter, pursuant to the trial court's directive, Barrett objected to the proffered qualification, questioned Twitty during voir dire, and objected again. *See State v. Forrester*, 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001) ("[M]aking a motion *in limine* to exclude evidence at the beginning of trial does not preserve an issue for review because a motion *in limine* is not a final determination. The moving party, therefore, must make a contemporaneous objection when the evidence is introduced. However, where a judge makes a ruling on the admission of evidence on the record immediately prior to the introduction of the evidence in question, the aggrieved party does not need to renew the objection." (citation omitted)).

As to the merits, we find no reversible error. "The decision to admit or exclude testimony from an expert witness rests within the trial court's sound discretion." *State v. Price*, 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006). "The trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion." *Id.* "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law."

*State v. Douglas,* 369 S.C. 424, 429–30, 632 S.E.2d 845, 848 (2006).

In support of his argument that the trial court erred in qualifying Twitty as an expert, Barrett relies on *State v. Brown,* 411 S.C. 332, 342, 768 S.E.2d 246, 251 (Ct.App.), *cert. denied,* (Aug. 6, 2015), and *State v. Anderson,* 413 S.C. 212, 218, 776 S.E.2d 76, 79 (2015), for the proposition that trial courts are prohibited from qualifying a person as an expert mental health professional in the area of child abuse characteristics and admitting that individual's expert testimony if that individual also conducted the alleged victim's forensic interview.

In *State v. Brown,* this court held the State's expert testimony on child abuse dynamics and delayed disclosures was not inadmissible as being within the ordinary knowledge of the jury; and, the court further held the expert's specialized knowledge of behavioral characteristics of child sex abuse victims was relevant and crucial in assisting the jury's understanding of why children might delay disclosing sexual abuse. 411 S.C. at 341–42, 768 S.E.2d at 251. Although the *Brown* court held the expert's testimony was properly admitted, the court distinguished improper bolstering in cases involving experts who themselves conducted the forensic interview from cases involving independent mental health experts who addressed general behavioral characteristics. *Id.* at 343–45, 768 S.E.2d at 252–53.

After *Brown,* our supreme court addressed this issue in *Anderson,* 413 S.C. at 218, 776 S.E.2d at 79. In *Anderson,* during an *in camera* hearing prior to trial, the trial court found the witness to be an expert in forensic interviewing. *Id.* However, when the State called the witness at trial, after reviewing her expert qualifications, the State offered the witness as " 'an expert in forensic interviewing *and* child abuse assessment.' " *Id.* (emphasis added). Over Anderson's objection, the trial court found the qualification was " 'as a forensic interviewer in child abuse assessment.' " *Id.* Anderson renewed his objection, arguing there had been no previous determination that the witness possessed expertise in child abuse assessment. *Id.* The trial court refused to hold a hearing to determine the existence of this expertise and whether the witness held the necessary qualifications. *Id.*

The *Anderson* court held the trial court erred in qualifying the witness as an expert in " 'child abuse assessment' " and as an expert in forensic interviewing. *Id.* at 218–19, 776 S.E.2d at 79. The court held the trial court erred in qualifying the witness as an expert in child abuse assessment because of its failure to hold a hearing on the existence of this expertise and determine whether the witness possessed the necessary qualifications. *Id.* at 218, 776 S.E.2d at 79.

Further, our supreme court noted a trial court *may* qualify a person as a child abuse assessment expert, stating, "Certainly we recognize that there is such an expertise: this is the type of expert who can, for example, testify to the behavioral characteristics of sex abuse victims." *Id.* at 218, 776 S.E.2d at 79 (citing *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993), *State v. Weaverling*, 337 S.C. 460, 523 S.E.2d 787 (Ct.App.1999), and *State v. White*, 361 S.C. 407, 605 S.E.2d 540 (2004)). Yet, the *Anderson* court went on to caution:

> The better practice, however, is not to have the individual who examined the alleged victim testify, but rather to call an independent expert. To allow the person who examined the child to testify to the characteristics of victims *runs the risk* that the expert will vouch for the alleged victim's credibility.

*Id.* at 218–19, 776 S.E.2d at 79 (emphasis added).

■ Under the specific facts of this case, we affirm as we find no error in Twitty's qualification as an expert mental health professional, the testimony she offered regarding general behavioral characteristics was admissible, and she did not improperly vouch for Victim's credibility. *Cf. Anderson*, 413 S.C. at 218–19, 776 S.E.2d at 79 (holding the trial court's refusal to determine the forensic interviewer's qualification as a child abuse assessment expert was patent error and the appellant suffered prejudice as the result of the expert vouching for the alleged victim's credibility).

We note that although the *Anderson* court offered cautionary advice, it did not prohibit outright the practice of qualifying the forensic interviewer who conducted the alleged victim's forensic interview as an expert in child abuse assessment. Barrett would have this court issue a blanket rule prohibiting trial courts from qualifying forensic interviewers as expert mental health professionals related to child abuse characteris-

tics *solely* because the interviewer also conducted the forensic interview in the case. However, the *Anderson* court did not issue such a prohibition.

Furthermore, the present case differs significantly from *Anderson.* In *Anderson,* the witness was qualified as an expert in forensic interviewing and child abuse assessment. Here, even though Twitty conducted Victim's forensic interview, she was not qualified as both an expert forensic interviewer and expert mental health professional. Whereas in *Anderson,* the trial court refused to hold a hearing to determine whether the witness held the necessary qualifications; here, the trial court properly found Twitty met the necessary qualifications to offer expertise in the area of behavioral characteristics displayed by child abuse victims. Twitty testified she was a licensed professional counselor, with a master's degree in clinical psychology. She stated most of her training included working specifically with children in situations where there were allegations of abuse. She attended training seminars and education courses regarding sexual abuse and worked on multiple cases involving sexually abused children.

Finally, unlike in *Anderson,* we find Twitty's testimony did not vouch for Victim's veracity or improperly bolster her testimony. The assessment of witness credibility is within the exclusive province of the jury. *State v. Wright,* 269 S.C. 414, 417, 237 S.E.2d 764, 766 (1977). Therefore, witnesses are generally not allowed to testify whether another witness is telling the truth. *See Burgess v. State,* 329 S.C. 88, 91, 495 S.E.2d 445, 447 (1998) (stating it is improper for a solicitor to ask a defendant "to comment on the truthfulness or explain the testimony of an adverse witness" and "the defendant is in effect being pitted against the adverse witness"). Similarly, witnesses may not improperly bolster the testimony of other witnesses. *See Smith v. State,* 386 S.C. 562, 564, 569, 689 S.E.2d 629, 631, 633 (2010) (stating a forensic interviewer's opinion that she found the victim's statement believable "improperly bolstered the [v]ictim's credibility"). "For an expert to comment on the veracity of a child's accusations of sexual abuse is improper." *State v. Jennings,* 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011).

In *Kromah,* our supreme court held forensic interviewers should avoid (1) stating the child was told to be truthful; (2)

providing a direct opinion as to the child's veracity or tendency to tell the truth; (3) indirectly vouching for the child's believability, such as stating the interviewer has made a compelling finding of abuse; (4) suggesting the interviewer believes the child's allegations; or (5) opining the child's behavior indicated the child was telling the truth. 401 S.C. 340, 360, 737 S.E.2d 490, 500 (2013). "Further, the *Kromah* court held forensic interviewers may testify regarding, among other things, the following: (1) the time, date, and circumstances of the interview; (2) any personal observations regarding the child's behavior or demeanor; or (3) a statement as to events that occurred within the personal knowledge of the interviewer." *Id.*

Barrett argues Twitty's testimony circumvented the mandates outlined in *Kromah*. We disagree. Although Twitty conducted Victim's forensic interview, she was not qualified as an expert forensic interviewer and her testimony fell within the parameters of *Kromah*. Regarding the forensic interview Twitty conducted, she testified as to the date, time, and place of the interview and her personal observations of Victim's demeanor. In fact, Twitty never directly or indirectly commented on the credibility of Victim's accounts of the alleged sexual assault. Moreover, she never addressed the veracity of Victim or opined whether Victim was being truthful.[2] Conversely, on cross-examination, Twitty admitted children lie, she could not give a diagnosis, and she was "certainly not a human lie detector." She elaborated that the focus of her interview was to assess overall child safety and she was "not

---

2. *See State v. Douglas*, 380 S.C. 499, 503–04, 671 S.E.2d 606, 609 (2009) (finding a forensic interviewer did not vouch for the victim's veracity where she never stated she believed the victim and gave no other indication concerning the victim's veracity); *Brown*, 411 S.C. at 344, 768 S.E.2d at 252 (finding the case distinguishable from other cases involving forensic interviewers because the expert never commented about the credibility of the victims' allegations or testimony, nor did she make any of the statements prohibited in *Kromah* ); *cf. State v. McKerley*, 397 S.C. 461, 465, 725 S.E.2d 139, 142 (Ct.App.2012) (holding the forensic interviewer's general testimony indicated belief in the victim's truthfulness and was thus inadmissible); *Smith*, 386 S.C. at 564, 569, 689 S.E.2d at 631, 633 (finding the forensic interviewer's opinion testimony that she believed the victim improperly bolstered the victim's credibility).

going in there looking for fact details to prove or not prove child sexual abuse."

Importantly, Twitty did not limit her testimony to explaining the exact behavioral characteristics Victim exhibited. *Cf. Anderson*, 413 S.C. at 219, 776 S.E.2d at 79 (holding the forensic interviewer "vouched for the minor when she testified only to those characteristics [that] she observed in the minor"). Although Twitty explained some of the behavioral patterns Victim exhibited—i.e., delayed reporting and sequence of reporting to peers before adults—she also explained additional characteristics that Victim did not display.

Moreover, we disagree with Barrett's argument that Twitty's expert testimony regarding general behavioral characteristics of sexually abused children was irrelevant and inadmissible. Twitty's expert testimony as a mental health professional was in line with our current jurisprudence. *See Schumpert*, 312 S.C. at 506, 435 S.E.2d at 862 ("[B]oth expert testimony and behavioral evidence are admissible as rape trauma evidence to prove a sexual offense occurred where the probative value of such evidence outweighs its prejudicial effect."); *State v. White*, 361 S.C. 407, 414–15, 605 S.E.2d 540, 544 (2004) ("Expert testimony on rape trauma may be more crucial in situations where children are victims. The inexperience and impressionability of children often render them unable to effectively articulate the events giving rise to criminal sexual behavior.").[3]

Accordingly, although the more prudent practice would have been to call an independent mental health professional in lieu of the forensic interviewer to discuss general behavioral characteristics, the trial court did not err in qualifying Twitty and admitting her testimony.

---

**3.** *See also Weaverling*, 337 S.C. at 474–75, 523 S.E.2d at 794 ("Expert testimony concerning common behavioral characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible. Such testimony is relevant and helpful in explaining to the jury the typical behavior patterns of adolescent victims of sexual assault. It assists the jury in understanding some of the aspects of the behavior of victims and provides insight into the sexually abused child's often strange demeanor." (citations omitted)); *Brown*, 411 S.C. at 341–42, 768 S.E.2d at 251 (finding the expert's "specialized knowledge of the behavioral characteristics of child sex abuse victims was relevant and crucial in assisting the jury's understanding of why children might delay disclosing sexual abuse, as well as why their

## II. Motion for Continuance

Barrett argues the trial court erred in failing to grant a continuance to allow him to obtain an expert witness to counter Twitty's testimony. We disagree.

■ "The denial of a motion for a continuance is within the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion resulting in prejudice." *State v. Meggett*, 398 S.C. 516, 523, 728 S.E.2d 492, 496 (Ct.App.2012). "An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support." *Id.*

When a motion for a continuance is based upon the contention that counsel for the defendant has not had time to prepare his case[,] its denial by the trial court has rarely been disturbed on appeal. It is axiomatic that determination of such motions must depend upon the particular facts and circumstances of each case.

*Id.* (quoting *State v. Babb*, 299 S.C. 451, 454–55, 385 S.E.2d 827, 829 (1989)).

In *State v. Nicholson*, 366 S.C. 568, 579, 623 S.E.2d 100, 105 (Ct.App.2005), Nicholson argued the trial court erred in refusing to grant his motion to suppress the testimony of an expert witness offered by the State or, in the alternative, to grant a continuance so he could obtain his own expert on the subject. The witness was called to testify about the general characteristics of a sexually abused victim, and Nicholson argued the notice he received was too close in time to the trial for him to prepare an adequate defense. *Id.* This court held:

The State, however, is not required to provide its witness list to a criminal defendant, and the disclosure in the present case of this witness to the defense before trial was nothing more than a professional courtesy. We therefore hold that the trial [court] properly declined to suppress the expert testimony and acted within [its] discretion in refusing to continue the case.

*Id.* at 579, 623 S.E.2d at 105–06 (footnotes omitted).

■ Here, Barrett argues he needed additional time to secure an expert to combat Twitty's testimony regarding

---

recollections may become clearer each time they discuss the instances of abuse").

Child Sexual Assault Accommodation Syndrome. However, Twitty stated she was not an expert on that topic and preferred not to testify on the subject. The *only* time in which the theory was discussed in front of the jury was when Barrett initiated the topic during recross-examination. Although Twitty discussed delayed disclosure and recantation, those are only two factors in the stages of behavior associated with the syndrome. Prior case law is clear that the topic of general behavioral characteristics of sexually abused children could arise in a CSC case with a minor. *See Weaverling,* 337 S.C. at 474, 523 S.E.2d at 794 (discussing the appellant's argument regarding similar expert testimony and stating "[e]xpert testimony concerning common behavioral characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible"). Therefore, Barrett was on notice that the trial might include testimony regarding general behavioral characteristics of sexually abused minors. Accordingly, the trial court did not abuse its discretion in declining to grant a continuance. *See Nicholson,* 366 S.C. at 579, 623 S.E.2d at 105–06 (holding the trial court acted within its discretion in declining to grant a continuance).

## CONCLUSION

Based on the foregoing, we affirm.

SHORT and LOCKEMY, JJ., concur.