24343

The STATE, Respondent v. James Neil TUCKER, Appellant.

(464 S.E. (2d) 105)

Supreme Court

*John D. (Jay) Elliott;* and *South Carolina Office of Appellate Defense,* Columbia, *for Appellant.*

*Attorney General Charles Molony Condon, Chief Deputy Attorney General Donald J. Zelenka,* Columbia; and *Solicitor Walter M. Bailey, Jr.,* Summerville, *for Respondent.*

Heard Sept. 21, 1995.

Decided Nov. 6, 1995.

MOORE, Justice:

This is a death penalty case. Appellant James Neil Tucker appeals his convictions and sentence. We affirm his convictions, reverse his sentence, and remand for resentencing.

## FACTS

Tucker broke into Shannon Mellon's house in the early morning hours of July 2, 1992. Armed with a gun, he taped her wrists and ankles behind her back and left her on her bed while he searched for things to steal.[1] Tucker then reentered Shannon's bedroom and shot her once in the head. While he was packing some of Shannon's clean clothes to take with him, Shannon regained consciousness, sat up, and said she could not see. Tucker shot her a second time in the head. He continued to pack and when he heard Shannon's labored breathing, he shot her a third time in the head. He then wrapped Shannon's body in a sheet and dragged it into the woods behind the house. Her body was discovered a week later. Tucker stole Shannon's car and drove to Spartanburg where he stayed with a friend for several days. He was apprehended in Maggie Valley, N.C., on July 10, 1992.

---

[1] Tucker was running from police who were looking for him for the murder of Rosalee Oakley in Sumter County. He was convicted and sentenced to death for Rosaless's murder in December 1994.

His trial was held from November 29-December 7, 1993. He was convicted of murder, armed robbery, grand larceny, and first-degree burglary.

## ISSUES

1) Did the shackling of appellant violate his due process and equal protection rights?

2) Did the trial judge err in disqualifying a juror?

3) Did the trial judge err in admitting evidence of the assault of a police officer during Tucker's arrest in Maggie Valley?

4) Did the trial judge err in refusing to instruct the jury on appellant's parole ineligibility?

## DISCUSSION

1) Shackles

Appellant was shackled throughout the trial. Appellant contends this violated his due process and equal protection rights and prejudiced him in both the guilt and sentencing phases.

Whether a defendant is restrained during trial is within the trial judge's discretion. The trial judge is to balance the prejudicial effect of shackling with the considerations of courtroom decorum and security. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed. (2d) 353 (1970). The trial judge is the best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and prevention of other crimes. *Brewster v. Bordenkircher*, 745 F. (2d) 913 (4th Cir. 1984).

Appellant has two previous convictions for escape, and at least one for attempted escape. He also fled the State and resisted arrest assaulting the officers in Maggie Valley. The shackles were not visible to the jury. Throughout the trial, the judge ensured appellant was sitting at the defense table or on the stand prior to the jury's entrances and exits into the courtroom.

The trial judge took precautions to minimize any prejudice then restraints might have caused throughout the trial and offered to give a curative instruction to explain appellant's failure to stand when the judge entered and exited the courtroom. Balancing the effect of the restraints and the need for

security, the trial judge did not err in restraining appellant based upon appellant's prior history of escapes and his resistance to arrest.

2) Disqualification of juror

Appellant contends the trial judge erred in disqualifying juror Kevin Canaday. Juror Canaday testified he was against the death penalty. He answered negatively when the trial judge asked a second time if he could vote for the death penalty. He also answered affirmatively when the trial judge asked if he was opposed to the death penalty. He testified he was "pretty firm" on his conviction against the death penalty. He also answered affirmatively when asked if he would always bring back a life sentence no matter what circumstances.

Upon questioning by defense counsel he testified: "I'm not saying I'm against the death penalty. But all I'm saying is whatever he did, you know, he deserve the punishment. But from me, I just say, give him life in prison." The following colloquy then took place between juror Canaday and defense counsel:

> Q: Do you feel that you would be able to make a decision on whether or not—that you wouldn't be able to make a decision as to whether to impose the death penalty until after you had actually had heard what these circumstances are?
> A: Well, yes I can make a decision.
> Q: You could make a decision?
> A: Uh-huh.
> Q: After you heard all the evidence?
> A: Uh-huh.
> Q: And if the evidence was sufficiently aggravating, could you then impose the death penalty?
> A: Right.

The trial judge found juror Canaday unqualified based on the totality of his responses. The trial judge stated he thought juror Canaday did not understand the last question and defense counsel was able to elicit an admission only by "picking" on an uneducated juror. Juror Canaday has a ninth-grade education.

In a capital case, a juror may not be excluded for his attitude against capital punishment unless it would render him unable to return a verdict according to the law. *State v. Longworth*, 313 S.C. 360, 438 S.E. (2d) 219 (1993). The standard is whether the juror's views would prevent or substantially impair the juror's performance of his duties as a juror. The determination whether a juror is disqualified is within the discretion of the trial judge and will not be reversed on appeal unless wholly unsupported by the evidence. Further, in reviewing the trial judge's disqualification of prospective jurors, the responses of a challenged juror must be examined in light of the entire voir dire. *Id.*

Viewing all of the responses of juror Canaday, the trial judge's disqualification is not wholly unsupported. Juror Canaday's views on the death penalty would have, at least, substantially impaired his performance as a juror. Therefore, we find no error.

3) Evidence of other crimes

Appellant contends the trial judge erred in allowing the arresting officers to testify about appellant's assault on one of them. During the trial, appellant objected to the evidence of the assault set forth in his confession and the witnesses' testimony regarding the incident. Appellant contends this information could only focus the jury's attention on his character as a "bad man." The trial judge refused to redact the references to the assault in the confession and allowed the witnesses to testify. The trial judge found the evidence was relevant since it showed flight.

Appellant is not appealing the admission of his confession or the denial of his motion to redact the portions of the his statement which detailed his assault on the arresting officers. The testimony of the arresting officers is cumulative to appellant's confession. The admission of improper evidence is harmless when it is merely cumulative to other evidence. *State v. Blackburn*, 271 S.C. 324, 247 S.E. (2d) 334 (1978). Therefore, if there was error, it was harmless.

4) Parole ineligibility charge

Citing *Simmons v. South Carolina*, — U.S. —, 114 S.Ct. 2187, 129 L.Ed. (2d) 133 (1994), appellant contends the trial judge erred in denying his request to charge the jury on pa-

role ineligibility. The State concedes if appellant is ineligible for parole, then *Simmons* applies because future dangerousness was argued. This issue hinges on whether appellant was eligible for parole.[2]

In 1974, appellant was convicted of rape. On June 3, 1986, the Omnibus Crime Act (Act) became effective. Under the Act, a person who had previously been convicted of a violent crime and then was convicted of a subsequent violent crime was ineligible for parole. S.C. Code Ann. § 24-21-640 (1986). Pursuant to the Act, rape was considered a violent crime in 1986.

In June 1993, the General Assembly passed an amendment to S.C. Code § 16-1-60 which defines violent crimes for purposes of § 24-21-640. This amendment was effective on January 1, 1994. Appellant was tried November 29-December 7, 1993. The amendment provided: "For a person to be considered guilty of a violent crime, the offense must be defined as a violent crime pursuant to subsection (A) at the time of the commission of the crime."[3]

The State contends under this amendment for an offense to be considered a violent crime it must have been *defined as such when the violent crime was committed.* Since the entire Act was not effective until June 1986, no violent crimes were defined for purposes of parole prior to this date. Therefore, the State argues appellant's 1974 rape offense does not make him parole ineligible. However, in July 1992, when appellant committed the murder the amendment was not effective and the law was clear he had committed a prior violent crime. *Elmore v. State,* 805 S.C. 456, 409 S.E. (2d) 397 (1991). Thus we hold appellant parole ineligible.

The State then argues appellant was able to present his position regarding ineligibility for parole during arguments which it contends would satisfy *Simmons.* In *Simmons,* the United States Supreme Court stated the defendant should be allowed to bring parole ineligibility to the

---

[2] The trial judge did not address this issue because *Simmons* had not been decided at the time of appellant's trial. The trial judge gave the jury the *Norris* charge which was the correct charge at the time of trial. *State v. Norris,* 285 S.C. 86, 328 S.E (2d) 339 (1985).

[3] This section was amended again on January 12, 1995, to delete this language and it now provides: "Only those offenses specifically enumerated in this section are considered violent offenses."

jury's attention by way of argument *or* an instruction from the court. *Id.* Here, the trial judge refused to give a parole ineligibility charge and also precluded appellant from arguing parole ineligibility to the jury when he ruled parole eligibility should not be considered by the jury.

Appellant was entitled to a charge on parole ineligibility. Therefore, we reverse his sentence and remand for resentencing.

Affirmed in part; reversed in part; and remanded.

TOAL, A.C.J., WALLER and BURNETT, JJ., and L. CASEY MANNING, Acting Associate Justice, concur.