**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-7161**

_____

THOMAS J. TORRENCE,

          Petitioner - Appellant,

v.

WARDEN SCOTT LEWIS,

          Respondent - Appellee.

_____

Appeal from the United States District Court for the District of South Carolina, at Orangeburg.  R. Bryan Harwell, Chief District Judge.  (5:05-cv-00893-RBH)

_____

Argued:  January 26, 2023                     Decided:  February 17, 2023

_____

Before WILKINSON, AGEE, and WYNN, Circuit Judges.

_____

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

_____

Allison Krause Elder, ROOT & REBOUND, Greenville, South Carolina, for Appellant. Matthew C. Buchanan, SOUTH CAROLINA DEPARTMENT OF PROBATION, PAROLE, AND PARDON SERVICES, Columbia, South Carolina, for Appellee.

_____

WYNN, Circuit Judge:

In 1992, habeas petitioner Thomas Torrence was sentenced to life without the possibility of parole for thirty years in South Carolina state court for a number of crimes he committed in 1987, including two murders. But in 2004, the South Carolina Department of Probation, Parole and Pardon Services ("Department") notified Torrence that he would never be eligible to seek parole because of an earlier armed-robbery conviction. Torrence contends that, in reaching this conclusion, the Department violated his federal due-process rights because, in his view, a temporary change in South Carolina parole-eligibility law in 1994 permanently "vested" his parole eligibility, such that the Department could not legally determine him ineligible to ever seek parole.

The district court rejected Torrence's contention. We granted a certificate of appealability, and now affirm.

I.

The facts in this case stretch back over more than four decades. In 1979, Torrence was convicted of armed robbery. At the time, neither armed robbery nor any other crime was classified as a statutorily violent offense in South Carolina. *State v. Tucker*, 464 S.E.2d 105, 109 (S.C. 1995) ("[N]o violent crimes were defined for purposes of parole prior to [June 1986]."). But in 1986, the South Carolina legislature enumerated armed robbery as a violent offense. Omnibus Criminal Justice Improvements Act, 1986 S.C. Acts 2955, 2992, § 33 (codified as amended at S.C. Code § 16-1-60). In the same Act ("the 1986 Act"), the legislature provided that "any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as

2

defined in Section 16-1-60" was ineligible for parole. *Id.* at 2990, § 30 (codified as amended at S.C. Code § 24-21-640).[1]

Torrence was released on parole from his armed-robbery sentence in 1985. In 1987, he was indicted alongside his brother, Michael Torrence, for several serious offenses related to the February 1987 murders of Charles Alan Bush and Dennis Lollis. The charges included two counts of murder. Michael Torrence was tried first and ultimately sentenced to death. *State v. Torrence*, 473 S.E.2d 703, 704–06 (S.C. 1996).

Torrence was tried by a jury in 1992 and convicted on all counts. At the time, the sentence for murder was either death or life imprisonment without eligibility for parole for twenty years; without eligibility for parole for thirty years if there were aggravating circumstances; or without eligibility for parole at all if the prisoner had a prior conviction for a violent offense. *See* S.C. Code § 16-3-20(A) (1987); *id.* § 24-21-640 (1987). Although Torrence had previously been convicted of armed robbery—which at this point had been statutorily defined as a violent offense—for some reason unexplained in the record, the court imposed a total effective sentence of life without eligibility for parole for thirty years.

During the pendency of Torrence's direct appeal, in 1993, South Carolina amended section 16-1-60 to add subsection (B), which stated that "[f]or a person to be considered guilty of a violent crime, the offense must be defined as a violent crime pursuant to subsection (A) at the time of the commission of the crime" ("the 1993 Act"). Sentencing

---

[1] "[W]here more than one included offense" is "committed within a one-day period or pursuant to one continuous course of conduct," those offenses are counted as one offense. 1986 S.C. Acts at 2990, § 30.

Guidelines, 1993 S.C. Acts 3229, 3239, § 8 (codified as amended at S.C. Code § 16-1-60). Critical to Torrence's argument in this case, the 1993 Act also added a "savings clause" to section 16-1-60, which stated in part that "[a]ll proceedings pending and all rights and liabilities existing, acquired, or incurred at the time this act takes effect are saved. . . . The provisions of [subsection (B)] apply retroactively to all persons convicted under the laws of this State." *Id.* at 3397, § 266.

The 1993 Act took effect on January 1, 1994. *Acts: 1993 Session*, S.C. Legislature, https://www.scstatehouse.gov/sess110_1993-1994/bills/93acts.php (last visited Feb. 14, 2023) (saved as ECF opinion attachment) (describing Act No. 184). But soon thereafter, South Carolina removed subsection (B) and the related portion of the savings clause from section 16-1-60, effective January 12, 1995. Act to Amend Section 16-1-20, 1995 S.C. Acts 43, 50, § 3 (codified as amended at S.C. Code § 16-1-60); *see id.* at 60, § 19; *id.* at 102. Nevertheless, Torrence contends that under the savings clause, his right to seek parole permanently vested when the 1993 Act took effect in 1994, notwithstanding its later repeal. In his view, the savings clause preserved his right to the application of subsection (B), under which he could not be considered guilty of a violent crime for the 1979 armed robbery because at the time of commission, armed robbery was not statutorily defined as a violent crime.

Torrence's direct appeal was finalized in March 1995, and he began post-conviction relief ("PCR") proceedings in state court. *Torrence v. Ozmint*, No. 3:05-cv-0893, 2008 WL 628604, at *2 (D.S.C. Mar. 5, 2008). Once those proceedings concluded in April 2004, he

4

moved to federal court, filing a timely, pro se § 2254 petition in March 2005. *In re Torrence*, 828 F. App'x 877, 878 (4th Cir. 2020) (per curiam).

Meanwhile, in June 2004, the Department sent Torrence a letter advising him that he was not eligible for parole because of his 1979 armed-robbery conviction. Torrence began administrative-appeals proceedings as well as PCR proceedings related to the parole-eligibility decision. And in the § 2254 petition he filed in 2005, Torrence included ten exhausted arguments, plus an eleventh related to the parole-eligibility determination. He filed a motion for abeyance to have a chance to exhaust the parole-eligibility claim in state court. The district court denied the motion, and Torrence proceeded with his other, exhausted habeas claims in federal court while pursuing the parole-eligibility claim in state court. The district court ultimately denied relief on Torrence's other habeas claims, and this Court denied a certificate of appealability. *See Torrence*, 2008 WL 628604, at *14; *Torrence v. Ozmint*, 305 F. App'x 55, 56 (4th Cir. 2008) (per curiam).

Torrence received a final denial of the parole-eligibility claim from the Supreme Court of South Carolina in May 2018, and in November 2019 he filed a pro se request for permission from this Court to file a second or successive habeas petition. *In re Torrence*, 828 F. App'x at 879. In 2020, applying abuse-of-the-writ principles, we held that Torrence did not need such permission because the petition was not second or successive. *Id.* at 881–82.

Torrence then returned to district court, where he filed a pro se motion to reopen his § 2254 petition to pursue the parole-eligibility claim. The district court granted the motion. Respondent Warden Scott Lewis moved for summary judgment, arguing that the parole-

eligibility determination was not cognizable in a federal habeas proceeding. The district court agreed and granted summary judgment to Respondent. *Torrence v. Lewis*, No. 5:05-CV-00893-RBH, 2021 WL 3053380, at \*1, \*3–4 (D.S.C. July 20, 2021).

We granted a partial certificate of appealability on the question of "whether Torrence has a vested right in the [1979] conviction being deemed 'nonviolent' such that the [Department] violated due process in ruling that . . . Torrence was statutorily ineligible for parole as a subsequent violent offender." Order at 1–2, *Torrence v. Lewis*, No. 21-7161 (4th Cir. July 21, 2022).

## II.

"We review *de novo* the district court's assessment . . . under § 2254(d)." *Valentino v. Clarke*, 972 F.3d 560, 579 (4th Cir. 2020). To the extent we reach the merits of Torrence's claim that his right to parole vested in 1994 and therefore the denial of parole eligibility deprives him of due process, our review is de novo because the state court did not adjudicate that claim on the merits.[2]

---

[2] "[T]he scrutiny and scope of our review of [Torrence]'s petition turns on whether the state [PCR] court previously 'adjudicated' his 'claim[]' 'on the merits.' If so, AEDPA requires us to apply § 2254(d)'s limitation on relief." *Valentino*, 972 F.3d at 576 (citation omitted) (quoting 28 U.S.C. § 2254(d)). By contrast, where the state court failed to adjudicate a claim on the merits, our review is de novo, *Winston v. Pearson*, 683 F.3d 489, 496 (4th Cir. 2012)—"*unless* the state court found the claim procedurally defaulted," *Richardson v. Kornegay*, 3 F.4th 687, 695 (4th Cir. 2021) (emphasis added), in which case "we will not review its merits under *any* standard unless the petitioner establishes both cause for the default and prejudice," *Plymail v. Mirandy*, 8 F.4th 308, 316 (4th Cir. 2021) (emphasis added).

Torrence raised the vesting issue before the state court in 2009. The state court rejected it on procedural grounds, concluding the claim was untimely. The court thus arguably relied on procedural default. But Respondent waived the procedural-default

Torrence claims that he was deprived of due process when the Department found him ineligible for parole in 2004, allegedly in contradiction of a South Carolina statute establishing that his right to parole eligibility permanently vested in 1994. But "[a] federal court may grant habeas relief 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.' Therefore, when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review." *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999) (citation omitted) (quoting 28 U.S.C. § 2254(a)), *aff'd*, 528 U.S. 225 (2000). So we must determine the extent to which Torrence's claims rest solely on state law.

A line of cases from the Supreme Court and this Court binds our analysis. In the Supreme Court's 1991 decision in *Estelle v. McGuire*, the petitioner had been convicted of murder for killing his infant daughter. *Estelle v. McGuire*, 502 U.S. 62, 64 (1991). During trial, the prosecution introduced evidence of prior injuries to the infant. *Id.* at 65. The jury convicted the petitioner, and the state courts affirmed on direct appeal, including as to the introduction of this evidence to prove "battered child syndrome." *Id.* at 66.

On federal habeas review, the petitioner challenged the introduction of the evidence of prior injuries as a due-process violation. *Id.* at 67. The Ninth Circuit agreed, in part because it concluded that the evidence was incorrectly admitted under California law. *Id.* But the Supreme Court reversed, noting that "[s]uch an inquiry . . . is no part of a federal

---

argument by failing to raise it below. Procedural default is an affirmative defense that must be raised before the district court, and where it is not, "we review [the] claim de novo"— even in "a clear case of procedural default." *Plymail*, 8 F.4th at 316–17. So our review of the merits, to the extent we reach them, is de novo.

7

court's habeas review of a state conviction" because, as the Court "ha[d] stated many times[,] . . . 'federal habeas corpus relief does not lie for errors of state law.'" *Id.* (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). This meant that habeas relief could only lie if "the admission of the evidence violated [the petitioner]'s *federal* constitutional rights," and the Supreme Court concluded it did not. *Id.* at 68 (emphasis added); *see id.* at 70; *cf. Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").

More recently, in *Swarthout v. Cooke*, the Supreme Court applied these principles in the parole context. *Swarthout v. Cooke*, 562 U.S. 216 (2011) (per curiam). In that consolidated case, two petitioners challenged the decisions of state actors—a parole board and the Governor, respectively—to deny them parole based on California's rule that an inmate is ineligible for parole if "some evidence" supports that they are currently dangerous. *Id.* at 217; *see id.* at 218. In each case, the state courts affirmed the denial of parole. *Id.* at 217–18. But the Ninth Circuit found that both petitioners were entitled to federal habeas relief because, in its view, the state courts made unreasonable determinations of fact that the petitioners were dangerous. *Id.* at 218–19. In a per curiam reversal, the Supreme Court noted that, "[i]n granting habeas relief based on its conclusion that the state courts had misapplied California's 'some evidence' rule, the Ninth Circuit must have assumed either that federal habeas relief is available for an error of state law, or that correct application of the State's 'some evidence' standard is required by the federal Due Process Clause. Neither assumption is correct." *Id.* at 219.

8

So Torrence cannot receive federal habeas relief solely for an error of state law, even if one exists. Rather, federal habeas relief may be based only on a violation of *federal* law—in this case, due process.

As *Swarthout* explained, in analyzing a due-process challenge, "[w]e first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Id.* As to the first step, "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence." *Id.* at 220. However, the Supreme Court agreed that the notion "that California law creates a liberty interest in parole" was "a reasonable application of [the Court's] cases." *Id.* at 219–20. And here, Respondent concedes that South Carolina has created a liberty interest in parole eligibility. Response Br. at 8–9; *see Furtick v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 576 S.E.2d 146, 149 (S.C. 2003) ("In our opinion, the *permanent* denial of parole *eligibility* implicates a liberty interest sufficient to require at least minimal due process.").

When a State creates such a liberty interest, "the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures." *Swarthout*, 562 U.S. at 220. But this review is strictly confined. After all, as the Supreme Court put it in *Swarthout*, "[i]t [would] not do to pronounce California's 'some evidence' rule to be 'a component' of the [federally protected] liberty interest," because "[s]uch reasoning would subject to federal-court merits review the application of all state-prescribed procedures in cases involving liberty or property interests, including (of course) those in criminal prosecutions," which "has never

9

been the law." *Id.* at 221–22. "'[A] mere error of state law is not a denial of due process'" under the Federal Constitution that can support federal habeas intervention; rather, "the responsibility for ensuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts." *Id.* at 222 (internal quotation marks omitted) (quoting *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982)).

Further, "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the petitioner] received, not whether the state court decided the case correctly." *Id.* And "[i]n the context of parole," the Supreme Court "ha[s] held that *the procedures required are minimal.*" *Id.* at 220 (emphasis added). Under the Constitution, all that is required when a prisoner eligible for parole consideration is denied release on parole is that the prisoner be "allowed an opportunity to be heard and [be] provided a statement of the reasons why parole was denied." *Id.* (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979)). In *Swarthout*, that standard was readily satisfied: the two petitioners "were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied." *Id.*

Our 1996 decision in *Vann v. Angelone* is even more directly on-point than *Swarthout* because, unlike *Swarthout*—but like the case at hand—it involved not a parole-*release* decision but a "state decision[] with respect to an inmate's initial *eligibility* for parole consideration." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (emphasis added). In *Vann*, as here, the State Department of Corrections had found the petitioner ineligible for parole under state law, and had informed him by letter of his ineligibility and

10

the reason for it. *Id.* at 521. The petitioner claimed this was error. "In short, [he] invite[d] us to construe the meaning of [a particular provision] of the Virginia Code as well as to judge the adequacy of the [Department of Corrections]'s decision." *Id.* at 522. We rejected that invitation as being beyond our role as a court sitting in federal habeas review. *Id.* at 522–23. As we put the point bluntly a few years later in *Ramdass v. Angelone*, "parole eligibility is a question of *state* law and therefore is not cognizable on federal habeas review."[3] *Ramdass v. Angelone*, 187 F.3d 396, 407 (4th Cir. 1999).

*Vann* is indistinguishable from this case. And because we cannot consider whether a State's parole-eligibility decision was made properly in accordance with state law, we are left to review only whether the procedures afforded the petitioner accorded with his

---

[3] Torrence attempts to distinguish *Vann* and *Ramdass* because "the Virginia Supreme Court had a clear record of interpreting" the Virginia statute at issue in those cases, whereas "the South Carolina courts have not interpreted the savings clause." Reply Br. at 8. We reject this argument for two reasons. First, Torrence does not explain how the lack of a state-court interpretation creates a loophole to the fact that we may "entertain" a federal habeas petition from a state prisoner "*only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). Second, Torrence's premise is at least partially flawed. While neither party has located a case evaluating the savings clause specifically, the Supreme Court of South Carolina *has* held that a prisoner in a situation factually similar to Torrence's was ineligible for parole. *Tucker*, 464 S.E.2d at 109 (holding that appellant was ineligible for parole on his conviction for a post-1986 Act, pre-1993 Act murder because he had a prior (pre-1986 Act) rape conviction); *cf. Phillips v. State*, 504 S.E.2d 111, 112 n.2 (S.C. 1998) (noting in the context of an ex post facto challenge "that between 1993 and 1995, § 16-1-60 was amended to provide it had prospective effect only"); Deborah Drucker Deutschmann & Stephen K. Benjamin, *Feature: Accurately Advising Clients on Parole Eligibility*, 12 S.C. Law. 26, 28 (2000) (guidance from the Department interpreting *Phillips* to mean that, during the year that the 1993 Act was in effect, "both the prior and the subsequent crime had to have been defined as violent [at the time of commission] for the person to be considered ineligible for parole," whereas before its effective date and after its repeal, "only the subsequent crime must have been committed after June 3, 1986 and have been defined as violent at the time of the commission of the crime").

11

federal due-process rights. *See Vann*, 73 F.3d at 523 ("Whether a federal court would have reached the same conclusion [as to the meaning of a state law implicating parole eligibility] in the first instance is beside the point. The point is that [the State] reached that conclusion, and its decision must be sustained."). In *Vann*, we concluded that, "[a]ssuming, arguendo, that a liberty interest . . . exist[ed], the procedures mandated by the due process clause were satisfied" because the petitioner received a letter explaining the parole-eligibility decision.[4] *Id.* (citing *Bloodgood v. Garraghty*, 783 F.2d 470, 473 (4th Cir. 1986); *Franklin v. Shields*, 569 F.2d 784, 801 (4th Cir. 1977) (en banc) (per curiam)).

There is no dispute that Torrence received a statement of reasons why he was not eligible for parole. The 2004 letter from the Department makes clear that Torrence is ineligible because his 1992 murder convictions followed a 1979 armed-robbery conviction, and pursuant to S.C. Code § 24-21-640, a defendant convicted of a violent crime who has previously been convicted of another violent crime is not eligible for parole. Accordingly,

---

[4] More recently, *Swarthout* stated in the context of parole-*release* decisions that the prisoner must be "allowed an opportunity to be heard" in addition to receiving "a statement of the reasons why parole was denied." *Swarthout*, 562 U.S. at 220. We have no occasion to consider whether an opportunity to be heard *before* a parole-*eligibility* decision is required by *Swarthout* because Torrence has not made such an argument here. Accordingly, for purposes of this case, we adhere to our precedent establishing that for parole-eligibility decisions, the State need only "furnish to the prisoner a statement of its reasons for denial of parole" in order to satisfy federal due-process requirements. *Vann*, 73 F.3d at 522 (quoting *Franklin v. Shields*, 569 F.2d 784, 801 (4th Cir. 1977) (en banc) (per curiam)); *cf. Burnette v. Fahey*, 687 F.3d 171, 181–82 (4th Cir. 2012) (also adhering to this precedent after *Swarthout*). We note, however, that Torrence received ample opportunities to be heard after receiving the Department's letter, including in proceedings before the South Carolina Administrative Law Court and in State PCR proceedings.

Torrence received the limited process required by the Federal Constitution for a parole-eligibility determination.

## III.

For the reasons stated, we affirm the decision of the district court.

*AFFIRMED*