**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Henry L. Gray, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2019-001127

---

Appeal From Richland County
G. Thomas Cooper, Trial Judge
Paul M. Burch, Post-Conviction Relief Judge

---

Unpublished Opinion No. 2024-UP-227
Submitted April 1, 2024 – Filed July 3, 2024

---

**REVERSED AND REMANDED**

---

Appellate Defender Joanna Katherine Delany, of
Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant
Attorney General D. Russell Barlow, II, both of
Columbia, for Respondent.

---

**PER CURIAM:** In this post-conviction relief (PCR) action, Henry L. Gray
(Petitioner) appeals the denial of his PCR application. The PCR court found trial

counsel deficient in failing to object to Petitioner being shackled at trial.  The court did not find prejudice.  We reverse and remand.

**FACTS**

In October 2011, a Richland County grand jury indicted Henry L. Gray (Petitioner) for murder and first-degree lynching.  Petitioner's sister, Robin Reese, was indicted on the same offenses, and the two were tried together in 2012.  The jury convicted both defendants as charged, and the trial court sentenced each defendant to concurrent sentences of thirty years' imprisonment on the murder charge and thirty years' imprisonment on the lynching charge.  Petitioner filed a direct appeal to this court, which affirmed his convictions and sentences.[1]

The charges against Petitioner and Reese arose from the death of Kenneth Mack on February 13, 2010.  According to the State, Mack approached Reese's thirteen-year-old daughter (Minor) outside Gonzales Gardens, the housing complex where she lived, and, after she rebuffed him and punched his face, he grabbed her and knocked her to the ground.  The State further alleged Minor, Marcellius Brooks, and others who witnessed the incident attacked Mack, who went "running down towards the bottom of the complex" when the fight ended.  The State contended Reese, who became upset when she learned what had happened to Minor despite assurances from Brooks that he and others "took care of it," called Petitioner to tell him about the incident just as Mack, still "knocked up" from the fight, came to see him.  When Petitioner learned about the incident from Reese, he allegedly grabbed Mack and swept his "feet out from under him," which caused Mack to fall onto the concrete.  Petitioner and Reese, who came onto the scene, then beat and punched Mack, and Reese grabbed a heavy metal chair, which she "slam[med] into" Mack several times.  Mack became unresponsive, and someone eventually called 911; however, he was pronounced dead after he was taken to the hospital.

Dr. Bradley Marcus performed the autopsy of Mack's body and determined he died from a skull fracture caused by blunt force trauma to his head.  Dr. Marcus stated the amount of force necessary to cause such a fracture would have been significant, and opined the fatal injury was consistent with the State's theory that Mack fell head first onto the concrete after someone swept his feet from under him.

Petitioner, however, contended Mack died from the first beating by Brooks and the other participants in that fight.  In support of this theory, trial counsel called Dr.

---

[1] See *State v. Gray*, 408 S.C. 601, 759 S.E.2d 160 (Ct. App. 2014).

Adel Shaker, an expert in forensic pathology, who testified a person can walk away from an initial beating during a "lucid interval" but subsequently succumb to fatal injuries inflicted during that beating. Dr. Shaker explained that during the lucid interval, blood would have accumulated on the surface of the decedent's brain to the point that it could stop respiratory and cardiac activity.

In rebuttal to the defense's case, the State called Dr. Clay Nichols, who was qualified as an expert in forensic pathology. Dr. Nichols testified that he reviewed Mack's autopsy report and determined the evidence did not support the conclusion Victim suffered blunt force trauma in the first attack, but the evidence did support the finding that he suffered blunt force trauma from falling onto the concrete during the second assault. Therefore, he concluded that, but for the second assault, Victim would not have died.

Both Petitioner and Reese were shackled throughout their trial. At the PCR hearing, trial counsel agreed it was obvious Petitioner was shackled during trial and he called attention to this fact in his opening argument; however, he also explained the purpose of his comments was "to soften the blow a little bit." Trial counsel testified he and Reese's attorney had a conversation with the trial court in chambers before the trial began about the shackles, and the trial court informed them the shackles were "required in this particular matter." Trial counsel also admitted he was not aware of the requirement that a trial court must place on the record its reasons for shackling a defendant and agreed he should have made an on-the-record objection to the shackling.

The PCR court found "the absence of an objection to the trial judge's failure to place [on the record] his findings as to why visible shackling was required in [Petitioner's] case constituted deficient performance under *Strickland*."[2] The PCR court, however, denied relief based on its finding that Petitioner failed to show prejudice from this deficiency. The PCR court reasoned "an objection would have simply required the trial judge to place his previously-found . . . reasons for requiring shackling in this case on the record and thereby preserve the issue for appellate review." This court granted certiorari.

**STANDARD OF REVIEW**

"This Court gives great deference to the factual findings of the PCR court and will uphold them if there is any evidence of probative value to support them." *Sellner*

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

*v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016) (quoting *Jordan v. State*, 406 S.C. 443, 448, 752 S.E.2d 538, 540 (2013)).  "Questions of law are reviewed de novo, and we will reverse the PCR court's decision when it is controlled by an error of law."  *Id.*  (quoting *Jamison v. State*, 410 S.C. 456, 465, 765 S.E.2d 123, 127 (2014)).

## LAW/ANALYSIS

Petitioner contends the PCR court erred in finding he was not prejudiced by trial counsel's failure to object to him being shackled during the majority of the trial.  We agree.

"A PCR applicant bears the burden of establishing he is entitled to relief."  *Terry v. State*, 394 S.C. 62, 66, 714 S.E.2d 326, 329 (2011).  "To prove counsel was ineffective, the applicant must show counsel's performance was deficient and the deficient performance caused prejudice to the applicant's case."  *Id.*  "To prove trial counsel's performance was deficient, an applicant must show 'counsel's representation fell below an objective standard of reasonableness.'"  *Smalls v. State*, 422 S.C. 174, 181, 810 S.E.2d 836, 840 (quoting *Williams v. State*, 363 S.C. 341, 343, 611 S.E.2d 232, 233 (2005)).

We first find the record supports the PCR court's finding that trial counsel performed deficiently in failing to object on the record to the shackling; trial counsel himself agreed at the PCR hearing that he should have made such an objection.

We next turn to the prejudice prong of a claim of ineffective assistance of counsel.  "To show prejudice, the applicant must show that, but for counsel's errors, there is a reasonable probability the result of trial would have been different."  *Terry*, 394 S.C. at 66, 714 S.E.2d at 329.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial."  *Id.*

We find there is a reasonable probability the outcome of the trial would have been different.  "Whether a defendant is restrained during trial is within the trial [court]'s discretion."  *State v. Heyward*, 432 S.C. 296, 323, 852 S.E.2d 452, 466 (Ct. App. 2020) (quoting *State v. Tucker*, 320 S.C. 206, 209, 464 S.E.2d 105, 107 (1995)).  However, "the Constitution forbids the use of visible shackles during the . . . guilt phase [of trial], unless that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial."  *Deck v.*

*Missouri*, 544 U.S. 622, 624 (2005) (quoting *Holbrook v. Flynn*, 475 U.S. 560 (1986)). "The trial judge is to balance the prejudicial effect of shackling with the considerations of courtroom decorum and security." *Tucker*, 320 S.C. at 209, 464 S.E.2d at 107.

In *Heyward*, this court determined the trial court abused its discretion in denying the defendant's request to remove his shackles during jury selection because the record showed no reason that shackling him was necessary, such as concerns about security or courtroom decorum, and the defendant asserted he was "well-behaved in his three prior court appearances." *Heyward*, 432 S.C. at 324, 852 S.E.2d at 466. Nevertheless, this court ultimately held there was no reversible error because "nothing in the record indicate[d] . . . any of the jurors who were selected for Heyward's trial could or did see his shackles"; thus, the trial court's decision to allow him to be shackled was harmless error. *Id*. at 326-27, 852 S.E.2d at 467-68.

Our supreme court addressed this court's decision in *Heyward* and affirmed as modified. Our supreme court found the trial court's summary denial of the request to remove the visible leg shackles during jury selection violated due process because "the trial court made no effort whatsoever to assess whether the shackles were necessary, nor to ensure the jury could not see them." *State v. Heyward*, 441 S.C. 484, 494, 895 S.E.2d 658, 663 (2023). Thus, the supreme court found the trial court's failure to consider Heyward's request was an abuse of discretion. However, the supreme court found the trial court's error was harmless because the State conclusively proved Heyward's guilt with overwhelming evidence such that no other rational conclusion could be reached except that he was guilty. The "overwhelming evidence" provided by the State included Heyward's DNA under the victim's fingernails and neck, eye-witness testimony, and fingerprints. The court went on to explain:

> [A] defendant in a criminal trial may not be required to wear handcuffs, leg shackles, or other restraints in the presence of the jury unless the trial court makes specific findings on the record as to the particular reasons the restraints are necessary. If the court finds restraints are necessary, it must make every reasonable effort to ensure the restraints are not visible to the jury.

*Id*. at 493–94, 895 S.E.at 663.

Here, the court neither explained nor put on the record the reason for shackling Petitioner. Further, there was no indication that the trial court, in concluding shackling was necessary, ever conducted the required balancing test between the "prejudicial effect of shackling with the considerations of courtroom decorum and security." *Tucker*, 320 S.C. at 209, 464 S.E.2d at 107. In contrast to the situation in *Heyward*, there was no dispute here that Petitioner's shackles were "obvious." Further, although the State argued in its return that an objection would have been futile because of legitimate security concerns that would warrant physical restraints on both defendants—specifically, the brutal nature of the crimes with which Petitioner and Reese were charged and Petitioner's alleged gang affiliations—we agree with Petitioner that the record included no evidence Petitioner had been disruptive in pretrial detention or posed a flight risk. Unlike *Heyward*, the State did not provide overwhelming evidence to conclusively prove Petitioner was guilty. Conflicting testimony from experts and eyewitnesses created ambiguity as to which attack on Victim ultimately killed him. Thus, we find the PCR court's finding that Petitioner was not prejudiced by the trial court's error was not harmless.

Petitioner was prejudiced by trial counsel's deficiency; therefore, the PCR court's finding is reversed and remanded. Petitioner and his co-defendant, Reese, were tried together. They were seated together, along with counsel, at the defense table for the entirety of the trial. At the PCR hearing, Petitioner testified that he was wearing everyday civilian clothes at trial, but his hands and feet were shackled. He further testified that when he stood to look at the jury members, he was sure they could see the shackles. At trial, Reese testified on her own behalf. She walked to the witness stand while her hands and feet were both bound in handcuffs and shackles. In its opinion addressing Reese's application for post-conviction relief, this court explained it was unclear from the record whether the jury could view Reese's shackles at any other time during the trial; however, it was clear to the court and the jury that Reese was shackled on her walk to and from the witness stand. *Reese v. State*, 441 S.C. 392, 406, 894 S.E.2d 295, 302 (Ct. App. 2023). Here, although Petitioner did not testify in front of the jury, we find trial counsel's failure to object to his shackles was prejudicial. We believe the jury would have no other reaction but to look to Reese's co-defendant as she walked, completely shackled, to the witness stand to testify. Her obvious shackling only drew more attention to Petitioner's shackling. We believe the jury inferred dangerousness, volatility, and fear of both co-defendants when viewing the shackles in the trial context. Similar to this court's finding in *Reese*, we believe "the potential impact [of shackling] on the jury was far greater than the PCR court's order suggests." *Id.*

**REVERSED AND REMANDED.**[3]

**THOMAS, MCDONALD and VERDIN, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.